Hoyer v. State, 180 Wis. 407.

Hoyer, Plaintiff in error, vs. The State, Defendant in
error.

*March 10—April 3, 1923.*

*Searches and seizures: Judicial determination: Intoxicating liq-
uors: Search of automobile without warrant: Admissibility in
evidence of liquor seized: Constitutional law.*

1. The granting of a search warrant is a matter for judicial deter-
   mination and not within the much more limited field of the
   discretion vested in executive or administrative officers.
2. Where deputy sheriffs, without a search warrant, seeing de-
   fendant's automobile standing in a street after a collision,
   approached it, opened the door and removed bottles of in-
   toxicating liquor from a pocket back of the seat, and there-
   upon seized the automobile together with the liquor, such
   search and seizure was without sufficient warrant in law and
   therefore unlawful, being in violation of sec. 11, art. I, Const.,
   securing the right of the people against unreasonable searches
   and seizures.
3. In a prosecution under sub. (3), sec. 1543, Stats. 1921, for un-
   lawfully transporting intoxicating liquor, evidence consisting
   of such intoxicants taken without a search warrant is inad-
   missible against defendant as being in violation of his rights
   under sec. 8, art. I, Const., providing that no person shall be
   compelled in any criminal case to be a witness against him-
   self.

Error to review a judgment of the circuit court for
Racine county: E. B. Belden, Circuit Judge. *Reversed.*

Plaintiff in error, hereinafter designated as defendant,
was prosecuted on an information charging him with viola-
tion of sub. (3), sec. 1543, Stats., by the unlawful trans-
porting of intoxicating liquors in the city of Racine on No-
vember 24, 1921.

At the time in question defendant, a resident of Racine,
was the owner of a Dort automobile which had been left by
him in a public garage during his absence on a hunting trip
for about twelve days prior to Sunday, November 24th,
the day in question. He returned to Racine on the morning
of that day and first again used the automobile at about noon

in returning a gun, which he had borrowed, to the sheriff of Racine county. He had placed alcohol in the radiator. He with two friends drove around the city during the afternoon. Between 5 and 6 o'clock p. m. his automobile was injured in a collision with another car. The radiator of his car took fire immediately after the collision; the fire department was called and put it out and then moved the automobile about a half a block, and it was left standing next to the curb on a city street. The defendant left and was gone about one-half hour and was then informed that his automobile was being taken. He returned and found that it was being towed away by Deputy Sheriff Lindstrum acting under instructions from the sheriff. Defendant then protested against such action but without avail. Later in the same evening he called at the office of the sheriff and was then informed that intoxicating liquor had been found in the automobile and that it had been seized on that account. He then denied knowledge of any such having been in the car. He was arrested on the following day charged as above stated.

Upon the trial Deputy Sheriff Lindstrum testified for the state that he and one Kosterman, also a deputy sheriff, passed by the place of the accident about 6 p. m. on that Sunday and both stopped at the other car. Lindstrum then went alone to the defendant's car. Neither had any search warrant referring to this car or any warrant for the arrest of anybody in connection therewith. He also testified: I went on the south side of this car and standing there I could smell something funny. I happened to see a package in there. I went in the car and I seen a package there. I opened the door and went in and saw a package in the hole back of the seat and put my hand in there and got hold of a broken bottle. There was no cover on the hole, which was about ten by fourteen inches. I took out the broken bottle and looked it over. I thought it was eau de vie. I am familiar with the odor of intoxicating liquors and could

detect such when I observed them. He also testified on the preliminary examination, made a part of the record here, that the newspaper bundle in question was not sticking out but was jammed down in the compartment, and that at this time he went all through the car.

The other deputy, Kosterman, testified that upon being called over to defendant's car by Lindstrum he received the broken bottle and then stepped on the running board of the car and reached in and pulled out four other bottles from a little open pocket back of the seat. That he detected an unusual odor there, smelled like eau de vie, the national drink of Denmark. The testimony was undisputed that the five bottles contained gin with an excess of alcohol.

Prior to the hearing on the preliminary examination the defendant, upon his affidavit reciting his ownership of the automobile and its being on one of the public highways; that the deputies Lindstrum and Kosterman without his consent and without authority searched the said automobile and forcibly seized and carried away from the same certain bottles or containers containing beverages therein and seized the said automobile; that all such was an unlawful and unreasonable search and illegal seizure and without search warrant or warrant for his arrest, all contrary to constitutional provisions; and that it was proposed to use the articles so found as evidence against him in the prosecution then pending, moved the court commissioner for an order requiring the return of the said automobile and the property found or seized therein and to suppress all testimony obtained by reason of such unlawful search and seizure. No counter-affidavits were presented.

This motion was denied by the court commissioner. The defendant was bound over after a preliminary examination, and before trial again renewed the same motion, which was again denied. Upon trial the defendant challenged the use of any such evidence on the same grounds.

The defendant denied any knowledge of the fact of liq-

uors being in said automobile, and testified that the covers on the openings on the back of the automobile in which the bottles were found were closed at the time he left the automobile after the collision.   The two persons with him during the afternoon also so testified.

The defendant was found guilty and on July 17, 1922, was sentenced to the house of correction in Milwaukee county for ninety days.   Subsequent thereto an order was made directing the sale of the automobile so seized by the officers. Thereafter defendant sued out this writ of error.

For the plaintiff in error there was a brief by *Foley & Brach,* attorneys, and *Jerome J. Foley,* of counsel, all of Racine, and oral argument by *Jerome J. Foley* and *Gilbert Brach.*

For the defendant in error there was a brief by *Thorwald M. Beck,* district attorney of Racine county, and *J. A. Simpson* and *G. E. Smalley,* assistant district attorneys, and oral argument by *Mr. Beck* and *Mr. J. E. Messerschmidt,* assistant attorney general.

ESCHWEILER, J.   Defendant's uncontradicted affidavit used before the preliminary examination and again before trial disclosed that the automobile and the five bottles of liquor were possessed by the officers as the result of an unlawful search and seizure and such should have been so held as a matter of law.   When the same question is considered in connection with the testimony given by the deputy sheriffs on the preliminary examination and again at the trial the result is the same.   Under their testimony the situation presented to these officers at the time they entered the automobile and took its contents was one which, at the most, might have justified the issuance of a search warrant by a magistrate.   The granting of such a writ, however, is a matter for judicial determination and not within the much more limited field of the discretion vested in executive or administrative officers.   *State v. Peterson,* 27 Wyo. 185, 194 Pac. 342, 13

Hoyer v. State, 180 Wis. 407.

A. L. R. 1284, and the many authorities in that case cited. The search and seizure in this case was, upon the facts presented, without sufficient warrant in law and therefore unlawful.

Notwithstanding this, the evidence thus procured was received, and there is for consideration the presently much vexed question whether a trial court, when challenged as here, shall halt in the trial sufficiently to determine whether or not evidence offered by the state against a defendant charged with a crime has been obtained by the officers of the state by unlawful means, and particularly if in violation of rights secured to the defendant by constitutional guarantees, and if found to have been so obtained reject it.

The constitutional provisions particularly relied upon by defendant, so far as material, are as follows:

Art. I, sec. 8. "No person . . . shall be compelled in any criminal case to be a witness against himself."

Art. I, sec. 11. "The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated; and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized."

Sec. 8 corresponds in substance with art. V and sec. 11 is identical with art. IV, respectively, of the amendments to the United States constitution. Such federal provisions are not here asserted because not concerned with state action. *Minneapolis & St. L. R. Co. v. Bombolis,* 241 U. S. 211, 217, 36 Sup. Ct. 595; *Kentucky F. Corp. v. Paramount A. E. Corp.* 171 Wis. 586, 590, 178 N. W. 9.

In passing upon such question arising from similar constitutional provisions there are two clearly opposed views.

Some courts early adopted and have followed the doctrine that neither preliminary to nor upon the trial of a criminal cause will the court consider the question as to the means used in obtaining the offered evidence, relegating the de-

fendant to his action for damages if there were any unlawful invasion of his constitutional rights.    Among recent cases so holding with numerous citations to others are the following: *State v. Tonn* (Iowa) 191 N. W. 530 (which case evidently, though not expressly so stated in the majority opinion, is an overruling of their holding to the exact opposite of less than a year before in *State v. Rowley*, 187 N. W. 7); *Billings v. State* (Neb.) 191 N. W. 721; *People v. Mayen* (Cal.) 205 Pac. 435; *Johnson v. State*, 152 Ga. 271, 109 S. E. 662, 19 A. L. R. 641; *Comm. v. Tucker*, 189 Mass. 457, 470, 76 N. E. 127; *State v. Pauley* (N. Dak.) 192 N. W. 91.

The federal and many other courts, however, have held that on proper challenge the state will not be permitted to use against a defendant charged with crime evidence which appears to have been seized or obtained by government officials by or through a violation of constitutionally guaranteed rights.    *Amos v. U. S.* 255 U. S. 313, 41 Sup. Ct. 266, holding that liquor found through an unlawful search of defendant's home should, on demand, have been returned to him and could not be used as evidence over his objection; *Gouled v. U. S.* 255 U. S. 298, 41 Sup. Ct. 261, that papers obtained at defendant's home through stealth by a government representative is a violation of his constitutional guaranty against unlawful search and seizure, and to use them as evidence is a further violation of his constitutional guaranty that he shall not be compelled to be a witness against himself in a criminal case, the court saying (p. 306):

"In practice the result is the same to one accused of crime, whether he be obliged to supply evidence against himself or whether such evidence be obtained by an illegal search of his premises and seizure of his private papers.    In either case he is the unwilling source of the evidence."

In *Burdeau v. McDowell*, 256 U. S. 465, 41 Sup. Ct. 574, the majority held that this recognized rule did not

Hoyer v. State, 180 Wis. 407.

apply to papers stolen from defendant by a third person, no government official being concerned, and that such might be lawfully used as evidence when subsequently put in the possession of the government.   The rule in the *Amos* and *Gouled Cases, supra,* is followed in the federal courts, as is shown by these recent decisions: *Giles v. U. S.* (Ct. of App. 1st Cir. Oct. 28, 1922) 284 Fed. 208, where the liquor was seized under what was held to be an insufficient search warrant; *Snyder v. U. S.* (Ct. of App. 4th Cir. Nov. 7, 1922) 285 Fed. 1, where an arrest was made by an officer upon the suspicion created by the sight of the neck of a bottle protruding from defendant's pocket and a new trial was granted because of the improper use of the evidence so obtained; *U. S. v. Quaritius,* 267 Fed. 227; *U. S. v. Kraus,* 270 Fed. 578; *U. S. v. Slusser,* 270 Fed. 818, declaring that successful discovery is not sufficient of itself to justify that which was at the beginning an unlawful search; *Dukes v. U. S.* 275 Fed. 142; *Murphy v. U. S.* 285 Fed. 801 (Jan. 1923), where a conviction was reversed because money identified as having been in the mail pouch defendants were charged with having stolen was taken without search warrant from defendants' till and received in evidence.

Among the many state courts following the federal rule we cite *People v. Marxhausen,* 204 Mich. 559, 171 N. W. 557, 3 A. L. R. 1505, note at p. 1514; *People v. Halveksz,* 215 Mich. 136, 183 N. W. 752; *People v. Foreman* (Mich.) 188 N. W. 375; *People v. Dorrington* (Mich.) 191 N. W. 831; *People v. Margolis* (Mich.) 190 N. W. 306; *Tucker v. State,* 128 Miss. 211, 90 South. 845; *Hughes v. State* (Tenn.) 238 S. W. 588, 20 A. L. R. 639, note 652; *Helton v. Comm.* (Ky.) 243 S. W. 918; *Ash v. Comm.* (Ky.) 236 S. W. 1032; *Youman v. Comm.* 189 Ky. 152, 224 S. W. 860, 13 A. L. R. 1303, note 1360; *State v. Peterson,* 27 Wyo. 185, 194 Pac. 342, 13 A. L. R. 1284.

Much reliance is placed by counsel for the state upon two recent Michigan cases: *People v. Case,* 190 N. W. 289, and *People v. De Cesare,* 190 N. W. 302. In the former, by a divided court, it was held that where defendant had driven his automobile containing intoxicating liquor, in violation of the prohibition law, upon the public fair grounds where the county fair was in progress, police officers had a right to search such automobile without a warrant and the liquor so seized was admissible in defendant's prosecution. This holding was based upon the propositions that, as soon as illegal possession or transporting of liquors begins, such are forfeited to the state and a person can have no property rights therein, and also that the nature of the automobile and the extent to which it can be used as a means of crime furnishes basis for the view that such search is not unreasonable. So far as such decision might be construed to justify the search in the present case we cannot concur with it. A very interesting historical discussion on the subject is found in the dissenting opinion in that case by Mr. Justice WIEST, with whom concurred two other Justices. Upon the main proposition on which that opinion is based, namely, that the liquor in question was, by reason of illegal possession or transportation, forthwith the property of the state, the authorities are by no means all in accord; many holding that such property, either the liquor itself or the vehicle in which it is transported, requires some form of judicial determination to that effect before such forfeiture is absolute, generally conviction of the person possessing or transporting. *Gemart v. Pooler,* 171 Wis. 271, 177 N. W. 1.

It should be noted in connection with this Michigan case that it is well established doctrine that in all applications to have such evidence returned or its use suppressed the question for determination is not whether the defendant was in lawful or unlawful possession—owner or not owner—of it, but only if it was unlawfully taken from him. *U. S. v. Descy,* 284 Fed. 724; *Godat v. McCarthy,* 283 Fed. 689.

The second Michigan case (*People v. De Cesare, supra*), by the court divided as in the other case, may be distinguished in that the search there was made at the time the defendant was being arrested upon what was deemed sufficient probable cause to suspect him of being guilty of then committing a crime.

In most if not all of the other cases cited on behalf of the state substantially the same situation was presented as in the *De Cesare Case.* None of the cases so cited affect our conclusion as here reached.

That evidence obtained in search of defendant's person or immediate belongings at the time of his lawful arrest does not come within the rule or the situation here presented is indicated in such decisions as *Ash v. Comm.* (Ky.) 236 S. W. 1032; *Bell v. U. S.* 285 Fed. 145; *U. S. v. Rembert,* 284 Fed. 996 (but this case expressly recognizes that mere submission to the claimed right of officers to search is not such consent as amounts to waiver); *People v. Chyc,* 219 Mich. 273, 189 N. W. 70; *State v. Miller* (Wash.) 209 Pac. 9.

For ourselves we elect to stand, as this court has heretofore stood, with the federal and other courts which consider these provisions of the Bill of Rights as embodied in constitutions to be of substance rather than mere tinsel. We hold, therefore, that the evidence challenged in this case was taken by the officers by unlawful search and seizure and contrary to sec. 11, art. I, Wis. Const., *supra,* and was improperly received in evidence against him on the trial in violation of his rights under sec. 8, art. I, Wis. Const.

This court squarely aligned itself with rulings of the United States supreme court in *Thornton v. State,* 117 Wis. 338, 341, 93 N. W. 1107, and *State v. Murphy,* 128 Wis. 201, 207, 107 N. W. 470, each of which cited with approval *Boyd v. U. S.* 116 U. S. 616, 6 Sup. Ct. 524, and *Bram v. U. S.* 168 U. S. 532, 18 Sup. Ct. 183, *infra.*

We firmly believe as to each of these provisions that

which was said as to the right of exemption from compulsory self-incrimination in *Twining v. New Jersey,* 211 U. S. 78, at p. 91 (29 Sup. Ct. 14):

"It was generally regarded then [referring to the adoption of the several constitutions], as now, as a privilege of great value, a protection to the innocent though a shelter to the guilty, and a safeguard against heedless, unfounded, or tyrannical prosecutions."

The two constitutional provisions here invoked are quite closely interwoven, and generally, as in this case, that which is obtained by unlawful search and seizure is subsequently attempted to be used to incriminate him from whom obtained, the one violation being but a preface to the other. This view has been very fully and clearly discussed by ANDERSON, J., in *Tucker v. State,* 128 Miss. 211, 90 South. 845, and many authorities are there cited.

In *Lang v. State,* 178 Wis. 114, 189 N. W. 558, this court very recently set aside a conviction for murder because there were used in evidence against defendant, statements, miscalled a confession, extorted from him by resort to personal violence and methods declared to savor of the rack and thumb-screw. It is needless, perhaps, to say that we are still in accord with the views there expressed by Mr. Justice JONES, speaking for this court. The statements in that case obtained from the defendant were held inadmissible because of no probative force. But this court also there stated that other cases place the rejection of such evidence on the ground that it is a violation of the constitutional guaranty against the compulsory giving of evidence against oneself, citing to that effect *Bram v. U. S.* 168 U. S. 532, 18 Sup. Ct. 183, *supra.* That view seems tacitly, if not expressly, approved in the case of *Weeks v. U. S.* 232 U. S. 383, 393, 34 Sup. Ct. 341, and expressly so approved in *Gouled v. U. S.* 255 U. S. 298, 306, 41 Sup. Ct. 261, *infra,* as well as in *Silverthorne L. Co. v. U. S.* 251 U. S. 385, 391, 40 Sup. Ct. 182.

Hoyer v. State, 180 Wis. 407.

We see no reason in logic, justice, or in that innate sense of fair play which lies at the foundation of such guarantees, why a court of justice, rejecting as abhorrent the idea of the use of evidence extorted by violation of a defendant's right to be secure in person and exempt from self-incrimination though it may result in murder going unwhipt of justice, should yet approve of the use, in the same court of justice, by state officers, of that which has been obtained by other state officers through, and by, a plain violation of constitutional guarantees of equal standing and value, though thereby possibly a violation of the prohibition law may go unpunished.

Sec. 11, art. I, Wis. Const., *supra,* is a pledge of the faith of the state government that the people of the state, all alike (with no express or possible mental reservation that it is for the good and innocent only), shall be *secure* in their persons, houses, papers, and effects · against unreasonable search and seizure. This security has vanished and the pledge is violated by the state that guarantees it when officers of the state, acting under color of state-given authority, search and seize unlawfully. The pledge of this provision and that of sec. · 8 are each violated when use is made of such evidence in one of its own courts by other of its officers. That a proper result—that is, a conviction of one really guilty of an offense—may be thus reached is neither an excuse for nor a condonation of the use by the state of that which is so the result of its own violation of its own fundamental charter. Such a cynical indifference to the state's obligations should not be judicial policy. .

Such constitutional provisions here invoked are not grants of rights of action for trespass against official or individual violators of such guaranteed rights, for other provisions of the constitution give such remedies. To say, then, that when the state itself has thus violated its own pledges it may use the results thereby obtained for its own purpose, become a party to the trespass by ratification, trace its title through

wrongful acts of its officers, remain itself immune in its sovereignty from legal liability, and then relegate the individual whose rights are thus swept away and made valueless in and by a court of justice to his bootless and fruitless action of trespass against such trespassing state officials as individuals, is to gibe and to jeer.

No statute of limitations has or can run against such guarantees. The wisdom or propriety of them is not for the courts or state officials to question or debate any more than may such courts or officials question the wisdom or propriety of any other such provisions. Constitutional provisions of later date acquire no priority in value over their elders, and the efficacy of any such provision does not diminish in comparison with others in any proportion based upon their respective perspectives. Zeal for the enforcement of one provision should not succumb to the temptation to breach the fidelity owed to another coequal provision. *Lang v. State,* 178 Wis. 114, 189 N. W. 558. While they stand as they have so long stood the courts are pledged to support and uphold them, be the consequences what they may.

The defendant's conviction in this case having no sufficient foundation to support it without the use of evidence which had been unlawfully obtained must be reversed and set aside. This case presents a situation where we deem it proper not to send it back for a new trial, but to direct the dismissal of the proceedings.

*By the Court.*—Judgment reversed, and cause remanded with directions to discharge the defendant.