No. 25,048.

THE STATE OF KANSAS, *Appellant,* v. JOHN JOHNSON, *Appellee.*

### SYLLABUS BY THE COURT.

LIQUOR LAW—*Liquor Still and Apparatus Taken By Officers Acting Without Authority May Be Admitted in Evidence Against the Possessor Thereof.* A liquor still and apparatus taken from a dwelling house during the owner's absence, by the sheriff and county attorney, acting without semblance of lawful authority to search or seize, may be retained by the sheriff, and may be used as evidence in a criminal prosecution against the possessor for maintaining a liquor nuisance, although he made timely application to the court for return of the articles, possession of them having become a crime before the application was made.

Appeal from Phillips district court; WILLARD SIMMONS, judge. Opinion filed May 10, 1924. Reversed.

*C. B. Griffith,* attorney-general, *John F. Rhodes,* assistant attorney-general, and *W. N. Moore,* county attorney, for the appellant.

*A. W. Relihan, T. D. Relihan, J. T. Reed,* all of Smith Center, and *J. F. Bennett,* of Phillipsburg, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The state appeals from an order requiring return of a liquor still and apparatus, obtained by unlawful search and seizure, and held for use as evidence in the trial of a liquor case.

On February 10, 1923, the persons holding the offices of sheriff and county attorney visited the premises of defendant. He was not at home and, without warrant for arrest, search, or seizure, or any pretense of lawful authority, they entered his dwelling house and other buildings, and found and carried away the articles referred to. · On February 12 complaint was filed before a justice of the peace, charging defendant with making and selling intoxicat-

The State v. Johnson.

ing liquor and with maintaining a liquor nuisance. On February 19 he was found guilty by a jury of maintaining a nuisance, judgment was rendered on the verdict, and he appealed to the district court. On April 18 he filed in the district court a motion for an order requiring the sheriff to return the articles to him, on the ground they were unlawfully seized and held to be used as evidence against him. As indicated, the court sustained the motion. The sheriff is holding the articles pending disposition of the state's appeal.

The following statute took effect on March 23, 1923, a month after defendant appealed to the district court, and nearly a month before he filed his motion:

"It shall be unlawful for any person to manufacture or have in his possession any still, boiler or other vessel or apparatus to be used for the purpose of distilling or separating by any process of evaporation alcoholic spirit from any fermented substance, or any part of any such still, boiler or other vessel or apparatus, and any person so doing or having any such still, boiler or other vessel or apparatus, or part thereof, in their possession shall be deemed guilty of a misdemeanor and punished as herein provided." (R. S. 21-2111.)

Defendant relies on the decision in the case of *Weeks v. United States*, 232 U. S. 383, and other decisions of the supreme court of the United States creating and enforcing sanctions to the 4th and 5th amendments to the constitution of the United States, analogs of which may be found in the constitution of this state. (Bill of Rights, §§ 15 and 10.)

The decisions of the supreme court of the United States are not, of course, binding on this court, because they deal with restraints on action of the federal government only. Partly because of what this court regards as unsoundness of view, and partly because of the wavering character of those decisions, they have not been persuasive, and no attempt has been made to reconcile our own decisions with them.

In the case of *The State v. Miller*, 63 Kan. 62 (1901), 64 Pac. 1033, the syllabus reads:

"The fact that bottles, glasses, liquors and other articles may have been taken by an officer from the possession of the defendant in an unauthorized search of his premises does not constitute a valid objection to the admissibility of such articles in evidence against him, if they are otherwise pertinent and competent." (¶ 3.)

When made, that declaration of law was in full accord with the

overwhelming weight of authority. It was not in accord with the opinion in the case of *Boyd v. United States,* 116 U. S. 616 (1885), which amalgamated the 4th and 5th amendments, the court perceiving no difference between seizure of private papers to be used in evidence against the owner, and compelling him to be a witness against himself.

In the case of *Adams v. New York,* 192 U. S. 585 (1903), an officer having a search warrant for gambling paraphernalia, went outside his authority and seized private papers, which were subsequently admitted in evidence against the defendant. The court held that illegality of seizure did not affect admissiblity of the seized documents in evidence. In support of the decision the court quoted, as this court had done in the Miller case, section 254-a of Greenleaf on Evidence, as follows:

"Though papers and other subjects of evidence may have been *illegally* taken from the possession of the party against whom they are offered, or otherwise unlawfully obtained, this is no valid objection to their admissibility if they are pertinent to the issue. The court will not take notice how they were obtained, whether lawfully or unlawfully, nor will it form an issue to determine that question."

The court cited numerous cases which this court had cited in the Miller case, and quoted from some of them. A part of the quotation from *Commonwealth v. Tibbitts,* 157 Mass. 519, is as follows:

"Evidence which is pertinent to the issue is admissible, although it may have been procured in an irregular or even in an illegal manner. A trespasser may testify to pertinent facts observed by him, or may put in evidence pertinent articles or papers found by him while trespassing. For the trespass he may be held responsible civilly, and perhaps criminally; but his testimony is not thereby rendered incompetent." (p. 521.)

The 4th amendment provides that no search warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the thing to be seized. Therefore there can be no lawful seizure of anything not particularly described in a warrant duly supported and issued. Seizure of what the officer may happen to discover is not legalized because he had a search warrant for something else. The 5th amendment forbids compelling a person to be a witness against himself in a criminal case. The purpose of these amendments was illustrated and stated in the Adams case as follows:

"The right to issue a search warrant to discover stolen property or the means of committing crimes, is too long established to require discussion. The

The State v. Johnson.

right of seizure of lottery tickets and gambling devices, such as policy slips, under such warrants, requires no argument to sustain it at this day. But the contention is that, if in the search for the instruments of crime, other papers are taken, the same may not be given in evidence. As an illustration, if a search warrant is issued for stolen property and burglars' tools be discovered and seized, they are to be excluded from testimony by force of these amendments. We think they were never intended to have that effect, but are rather designed to protect against compulsory testimony from a defendant against himself in a criminal trial, and to punish wrongful invasion of the home of the citizen or the unwarranted seizure of his papers and property, and to render invalid legislation or judicial procedure having such effect." (*Adams v. New York*, 192 U. S. 585, 598.)

This was a repudiation of the *non sequitur* in Boyd's case that unlawful seizure renders articles seized inadmissible in evidence and, if common English words bear their ordinary signification, the repudiation was rested on grounds which make the subject of introduction of a collateral issue at the time the evidence is offered inconsequential.

In the Weeks case, 232 U. S. 383 (1914), the ruling was that, if timely application be made for return of papers seized by officers acting without warrant, the papers may not be admitted in evidence at the subsequent trial of the applicant for crime. In attempting to distinguish the Adams case, the unlawful conduct in that case was minimized by saying the documents were "incidentally" seized in lawful execution of a warrant. Greenleaf's rule contains two propositions: 1st, the court will not take notice of how offered evidence was obtained, whether lawfully or unlawfully; 2d, nor will it form an issue to determine that question. In distinguishing the Adams case the court restated this doctrine so that it took this form: The court "in the course of a trial" will not make an issue to determine legality or illegality of seizure. Finally it was said the decision in the Adams case was rested on application of the doctrine that a collateral issue will not be raised to ascertain the source from which testimony obtained in a criminal case comes (p. 396). The conclusion was, unsuccessful effort before trial to get back property unlawfully seized renders it inadmissible in evidence at the trial. It is respectfully submitted that this is emasculation by the gentle art of distinguishing and, in the case of *Gouled v. United States*, 255 U. S. 298 (1921), the court said a rule of practice must not be allowed, for any technical reason, to prevail over a constitutional right, and when, in the progress of a trial, it becomes probable there has been an unconstitutional seizure of papers, it is the duty

The State v. Johnson.

of the trial court to entertain an objection to their admission, or a motion for their exclusion, and to consider and decide the question as then presented, even where a motion to return the papers may have been denied before trial.

The late Senator Knute Nelson, former chairman of the judiciary committee of the United States senate, gives his view of the subsequent course of judicial opinion as expressed in decisions of the supreme court of the United States, as follows:

"As there are some courts that seem to hold that under the fourth amendment no search or seizure can be made without a warrant, so there are some courts that seem to hold that no written or documentary evidence, found in a search or seizure, can be used as evidence, and even on this there has been some halting. The wholesome doctrine of *Adams v. New York,* 192 U. S. 585, seems to have been overruled in *Weeks v. United States,* 232 U. S. 383; *Strand v. United States,* 251 U. S. 15, seems to follow in the wake of the Adams case; and likewise *Johnson v. United States,* 228 U. S. 457. This case, too, seems to have some bearing on the Boyd case. The same may be said of *Perlman v. United States,* 247 U. S. 7, 15.

"The case of the *Silverthorn Lumber Co. v. United States,* 251 U. S. 385, seems to be a relapse to the Weeks case; and even more, as it seems to overrule those cases which hold that a corporation has no immunity under the fifth amendment. *Wilson v. United States,* 221 U. S. 361.

"The case of *Gouled v. United States,* 255 U. S. 298, in part follows in the wake of the Silverthorn and Weeks cases. The opinion of the court really implies that no search or seizure can be made without a warrant, and then it puts papers obtained by an intelligence officer and papers obtained under a search warrant in the same category.

"The case of *Amos v. United States,* 255 U. S. 313, seems to be buttressed upon the Boyd, Weeks, and Silverthorn cases, and follows in their wake. In the Gouled case the papers were obtained through the zeal and skill of an intelligence officer of the United States army, and in the Amos case they were obtained through the permission of the wife; but in the case of *Burdeau v. McDonald,* 256 U. S. 465, they were obtained directly through a theft, and were held admissible in evidence. This seems to be a relapse to the Adams case, and to the rule laid down in Greenleaf on Evidence, section 254-a." (9 American Bar Association Journal, 776, December, 1923.)

The subject is discussed at length in 4 Wigmore on Evidence, 2d ed., sections 2183, 2264, authorities are collated in 24 A. L. R. 1408, and there are later decisions.

In 1903 this court said:

"The first point of error assigned is that the court below erred in admitting in evidence certain bottles of whisky and beer seized from the possession of appellants by an officer without a warrant. There was no error in this. The question was decided against appellants in *The State v. Miller,* 63 Kan. 62, 64 Pac. 1033." (*The State v. Schmidt,* 71 Kan. 862, 80 Pac. 948.)

In 1910, the case of *The State v. Turner*, 82 Kan. 787, 109 Pac. 654, was decided. Turner was believed to be guilty of a murder which had been committed. Two bullets were found at the place of the homicide. They had a certain weight, and had been discharged from a firearm the barrel of which was rifled in a certain way. But one kind of weapon would mark a bullet of that weight in that way, and such a weapon was traced to Turner's possession. Under threats of the sheriff and a possee, Turner dug up the pistol from a place where it had been hidden, and delivered it to the sheriff. The syllabus reads:

"At a trial on the charge of murder, neither the rule excluding proof of an involuntary confession nor that relating to self-incrimination forbids evidence that the defendant produced from a hiding place a revolver similar to that with which the homicide was known to have been committed, although such production was brought about by intimidation."

Section 10 of the bill of rights, forbidding that any person shall be a witness against himself, was involved, rather than section 15, relating to unreasonable searches and seizures, but the subject of admissibility of evidence unlawfully secured was considered. Because the views expressed are adhered to, pertinent portions of the opinion may properly be reprinted here:

"So far as concerns the rule that the accused shall not be required to be a witness against himself, evidence extorted from him by intimidation stands upon the same footing as though it had been procured by force, or by any other unfair or illegal method. It has already been decided by this court that articles of which the prosecutor has obtained possession by unlawful means—for instance, by seizure without process—may be introduced in evidence over the objection of a defendant whose rights have been thus violated. (*The State v. Miller*, 63 Kan. 62.) The rule authorizes the use as evidence, not only of articles taken by force, but also of those which the defendant has been coerced into delivering. The manner of their procurement, however reprehensible, will not prevent their use as evidence so long as the person against whom they are used has not been constrained by the court to produce them. A document that has been taken stealthily from the defendant's desk, or forcibly from his pocket, or that he has surrendered under a threat of personal violence, may be used against him, because its wrongful procurement creates no estoppel, and the story it tells is its own and not that of the defendant. But if he produces it in obedience to an order of the court it is incompetent, because under such circumstances his act is performed in the capacity of a witness and to admit the fruits of it as evidence would be to make use of him as a witness against himself. . . .

"True, in receiving as evidence information unlawfully obtained, a court may seem by judicial sanction to encourage wrongdoing. But such is not the real aspect of the matter. The sole question under investigation in a criminal

trial is the guilt or innocence of the defendant. Nothing not pertinent to that subject can be considered. Everything throwing light upon it should be admitted, unless forbidden by some rule of law. Extorted confessions are not excluded as a rebuke to those who have obtained them, but because they are regarded as of doubtful credibility. The provision of section 10 of the bill of rights that in a criminal prosecution 'no person shall be a witness against himself' forbids his being compelled to testify, but does not extend so far as to prevent the prosecution from making use at the trial of information obtained from him under duress. The courts do not approve a resort to illegal means to obtain evidence. They are not indifferent to a violation of the letter or spirit of the law designed for the protection of one accused of crime. But,a far-reaching miscarriage of justice would result if the public were to be denied the right to use convincing evidence of a defendant's guilt because it had been brought to light through the excessive zeal of an individual, whether an officer or not, whose misconduct must be deemed his own act and not that of the state." (*The State v. Turner*, 82 Kan. 787, 792, 794, 109 Pac. 654.)

In 1918 the decision in the Turner case was cited as authority for the declaration of law concluding the following paragraph:

"The state introduced in evidence the screen door through which the shot was fired. The defendant asserts that thereby his privilege against self-incrimination was violated, because the door, belonging to him and in his possession, had been taken away without his consent. That the state obtained the door unlawfully is not a just ground for refusing to admit it in evidence, inasmuch as the defendant was not compelled to surrender or produce it by testimonial process or order of the court." (*The State v. Van Wormer*, 103 Kan. 309, 326, 173 Pac. 1076, 180 Pac. 450.)

In 1922 the case of *Smithmeyer v. Hopkins*, 111 Kan. 329, 207 Pac. 655, was decided. The attorney-general, by *subpœna duces tecum*, had obtained possession of documents in an investigation touching violation of the anti-trust law. The district court had ordered return of the documents. This court had affirmed the order, notwithstanding the fact the attorney-general claimed some of the documents were instruments of crime, because, even if they were such instruments, he could not withhold them from a person who produced them in obedience to *subpœna duces tecum*. (*The State v. Smithmeyer*, 110 Kan. 172, 202 Pac. 638.) A criminal prosecution was commenced against Smithmeyer for violation of the anti-trust law, and the attorney-general kept the documents for use as evidence in the trial. Smithmeyer commenced an action of mandamus in this court to enforce obedience to the order to return the documents one of the declared objects of the proceeding being to prevent such use. The case was thoroughly briefed and ably argued, and the court was urged to abandon its own position, and

to follow the Boyd and Weeks cases, and other cases in accord with them. The court declined to order return of those documents which, as instruments of crime, had lost their character as property.

The result is, for nearly a quarter of a century this court has consistently adhered to the position it first assumed. The social consequences have not been such that the legislature has considered it necessary to interfere. If the subject were one of first impression, the court would be content to rest its decision on the opinion of the supreme court of California, written by Justice Sloane, in the case of *People v. Mayen,* 188 Cal. 237 (1922).

The essence of the matter is this. The constitutional provision forbidding unreasonable search and seizure lacks adequate sanction. Action for damages against the trespasser, punishment of public officials for contempt and by criminal prosecution and ouster, and discipline of attorneys, do not change the fact that the aggrieved citizen has been the victim of lawless raid. The courts deprecate the outrage as much as anybody, but the constitution stops with forbidding unreasonable search and seizure. It does not look forward to subsequent use of articles unlawfully seized as evidence, and there is no relation between the two subjects. Revulsion of feeling against the depredation leads to quest for a sanction in the constitution itself. By masking the process with sufficient fervent rhetoric, the provision that a man may not be compelled to be a witness against himself may be stretched to serve. That provision, however, stops with forbidding that the citizen shall be compelled to be "a witness" against himself, and its meaning, considered historically and remedially, is too clear for doubt: He may not be compelled to say or do anything in a criminal prosecution. Therefore, that provision bears no closer relation to competency of other relevant evidence in a trial for crime than the provision against unlawful search and seizure. The result is, to exclude articles wrongfully seized requires legislation or its equivalent. May the courts resort to the "convenient apologetic" of public policy? In that field, possibility of encouraging lawlessness must be balanced against actual necessity of punishing lawlessness, and the matter may well wait for authoritative pronouncement by the legislature.

The writer dissented in the Smithmeyer case. His views did not prevail, and he now regards the subject as *stare decisis.*

In this instance the defendant proceeded by motion filed in the criminal case. In this state, right to possession of personal prop-

erty is not triable in that way. Defendant carefully avoided making any claim of ownership or of possession of the articles, beyond the fact they were seized in his house and outbuildings and on his premises. When the motion was made, he could have no property in the articles, or right to possess them, and it would be an idle thing for the sheriff to return them, and then to arrest him and take them away from him for crime committed in presence of the officer.

The court erred in refusing to permit the state to file an amended pleading. (R. S. 63-402 and annotations.) Miscalling the pleading an information instead of a complaint was a matter of no consequence whatever.

The judgment of the district court is reversed, and the cause is remanded with direction to proceed in accordance with the views which have been expressed.

HARVEY, J. (dissenting): The clash in legal principles here is whether a provision of our constitution is to be rendered meaningless by a rule of evidence. We have on the one hand the provisions of our state constitution:

"The right of the people to be secure in their persons and property against unreasonable searches and seizures, shall be inviolate; and no warrant shall issue but on probable cause, supported by oath or affirmation, particularly describing the place to be searched and the persons or property to be seized." (Bill of Rights, § 15.)

And in criminal proceedings, "No person shall be a witness against himself, . . ." (Bill of Rights, § 10.) The principles here announced have grown out of the history of our civilization. They are embodied in our federal constitution (4th and 5th Amendments) and in the constitutions of most of the states and have long been regarded as characteristic of and essential to the government of a free people. On the other hand, we have the general rule of evidence that in the trial of a criminal case when evidence is offered which is competent and material to the issue then before the court, it will not be excluded because of the manner its possession was obtained by the party offering it. This rule has been long established, has become firmly fixed in the law of evidence, and is founded upon the reasons, first, that the court will not stop the trial of one charged with crime to try the collateral question of whether evidence offered was improperly obtained, and second (and by far more important), one charged with crime, if guilty, should not escape merited punishment because some one has proceeded irregularly or

even unlawfully in procuring the evidence which establishes his guilt.

When those conducting the prosecution have proceeded to obtain evidence in accordance with the constitutional provisions above quoted there is, of course, no conflict between the constitution and this rule of evidence; but when prosecuting officers ignore the constitutional provisions and proceed to obtain evidence in violation of them and then offer such evidence upon the criminal trial of the one whose constitutional rights they have thus infringed, as was done in this case, there is presented a real clash between constitutional provisions and the rule of evidence above mentioned and the question is, what to do in such a case?

It is said that searches and seizures were unknown to the early common law and were first used in the search for stolen property only. Because of their great aid many times in detecting and punishing crime, they gradually crept into the law until they became not only numerous but general. Search warrants were issued permitting the officer to search any place for any person or thing which would tend to aid in the prosecution of offenses. Similar warrants, writs of assistance, were much used in colonial times. The practice of the officers under such warrants became so obnoxious as to produce serious antagonism and opposition to their use was one of the principal causes of the American revolution. At the time our federal constitution was framed its authors, in order to have the benefit of the evidence produced by search warrants in the prosecution of crime and at the same time protect its citizens against the abuses previously practiced under such warrants, embodied the provisions above mentioned.

During the first one hundred years and more after the formation of our government the question here discussed seldom arose in the courts, but with the increased number of statutory offenses and the more general use of search warrants the cases became more frequent and are especially numerous within the last few years. The early authorities in this country without much discussion of the matter, and some of the later state decisions, hold that the rule of evidence should be followed and that the one who was deprived of his constitutional rights must seek redress by an action against the officers for damages. It is now generally recognized that such a procedure is inadequate and futile and many of the courts are now holding

that the only effective way of securing the constitutional rights of the party in such a case is to prohibit the use of such evidence by the prosecuting officers. This for the reason that the constitution is the supreme law of the land and hence superior in authority to a rule of evidence however well grounded it may be, and for the further reason that, as between the two, when the situation arises that one must yield to the other, stated in its strongest form, it is better that one guilty of crime go free in a single case than that fundamental principles of our government be held for naught; for, if the fundamental principles of our government be destroyed, all law, civil and criminal, becomes meaningless. Such a construction appears to many courts to be necessary to prevent abuses in the matter of search and seizure which have been deliberately made in reliance upon the rule that the evidence is admissible anyway and without fear of the hopelessly inadequate remedy of an action for damages. Such is the holding of the United States supreme court (*Boyd v. United States*, 116 U. S. 616; *Weeks v. United States*, 232 U. S. 383; *Gouled v. United States*, 225 U. S. 298; *Essgee Co. v. United States*, 262 U. S. 151), and federal courts generally. (*Ganci v. United States*, 287 Fed. 60; *Murphy v. United States*, 285 Fed. 801, and many others.) And the following state courts: *United States v. Johnstone*, 6 Alaska 323; *Haile v. Gardner*, 82 Fla. 355; *People v. Castree*, 143 N. E. 112 (Ill.); *Flum v. State*, 141 N. E. 353 (Ind.); *State v. Myers*, 36 Idaho 396; *Cotton v. Commonwealth*, 254 S. W. 1061 (Ky.); *People v. Conway*, 195 N. W. 679 (Mich.); *Strangi v. State*, 98 So. 340 (Miss); *State, ex rel. Samlin, v. District Court;* 59 Mont. 600; *People v. Jakira*, 193 N. Y. S. 306; *Dyer v. State*, 220 Pac. 69 (Okla.); *State v. Laundy*, 103 Ore. 443; *Elliott v. State*, 256 S. W. 431 (Tenn.); *State v. Salmon*, 73 Vt. 212; *State v. Gibbons*, 118 Wash. 171; *State v. Massie*, 120 S. E. 514 (W. Va.); *Hoyer v. State*, 180 Wis. 407; *State v. Peterson*, 27 Wyo. 185.

It has been held, where the property seized is of a kind the possession of which is an offense, and where the defendant does not claim to own the property, his motion to return it to him should be denied (*Ciano v. State*, 105 Ohio St. 229); that the proper motion in such a case is to suppress the evidence (*State v. Owens*, 259 S. W. 100 [Mo.]), and if that were the only question involved here I would not oppose a reversal.

The constitutional inhibition is against unreasonable searches

and seizures.  Accordingly it has been properly held that when one is lawfully arrested it is not unreasonable to search him; that an inspection of premises under pure food or health statutes or for purposes of taxation is not unreasonable for these are essential to the existence of our government, and generally that a search of a suspected automobile even upon the public highway to see if it contains intoxicating liquor, stolen property, or other evidence of crime, is not unreasonable, for in such a case to take time to get a search warrant would render it useless.  Other situations might be suggested in which a search without a warrant is not unreasonable, but no such situation existed in the case before us.  In this case the county attorney and sheriff, starting from the county seat without a warrant of any kind, where they had ample time and could have secured a search warrant if they had any reason to do so, went some miles into the country to the house of Johnson, finding no one at home they effected an entrance into his residence and there found and carried away certain articles which they thought could be used in evidence against him on the trial of a criminal charge.  Returning to the county seat, a warrant for Johnson's arrest was issued.  No search warrant was ever issued.  It is clear, of course, in this case that there was no reason to search his premises without a search warrant, hence, it was an unreasonable search, and in direct violation of the constitutional provisions above mentioned.

To my mind there is nothing so destructive to good government and so demoralizing to the cause of law enforcement as the open violation of the law by officers whose duty it is to enforce it.  Here a county attorney and sheriff, who had taken an oath to support and defend the constitution of the United States and the constitution of the state of Kansas, willfully and without reason, ignore and violate fundamental principles embodied therein.  Their conduct is a shock to the moral sense of the community, causing every citizen to feel insecure in his fundamental constitutional rights and to doubt the efficiency of government, and forces their law-enforcement friends to apologize for their conduct.  This cannot be overcome by the conviction of one against whom they thus obtained evidence.

Courts should and do protect officers in the discharge of their duties and are anxious that they be zealous and efficient in doing so. Realizing the difficulties often confronting them, they should not be held to trivial niceties in their procedure, and any time the situation is such that it can be said to be reasonable to search without a

The State, *ex rel.,* v. Electric Power Co.

warrant the evidence thus disclosed should not be excluded. But officers have no more license to violate the law than any one else and when they do so the constitutional rights of citizens must be protected. Until some other efficient way is devised for doing so, I would agree with the courts listed above, and protect such rights by excluding, upon proper and timely application, the evidence obtained by unlawful and unreasonable searches. This is the only present effective way to give force and meaning to the constitutional provisions.