PATIENCE DRAKE ROGGENSACK, J.
¶ 47. (concurring). I join the majority opinion's conclusions *311 that the officers conducted their search in reasonable reliance on a search warrant that they believed was valid and that the good faith exception to the exclusionary rule precludes suppression.[1] I write in concurrence to clarify that the "assurance of judicial integrity," standing alone, is not a sufficient basis upon which to employ the exclusionary rule to preclude the prosecution's use of evidence seized when there is no underlying finding of police misconduct. Accordingly, the majority opinion is not to be read as setting a new standard that permits the exclusion of evidence without police misconduct.
¶ 48. The exclusionary rule is a judicially created remedy that may be applied to certain violations, including those of the Fourth Amendment of the United States Constitution and Article I, Section 11 of the Wisconsin Constitution. Davis v. United States, _ U.S. _, 131 S. Ct. 2419, 2423 (2011); State v. Ward, 2000 WI 3, ¶¶ 46, 58, 231 Wis. 2d 723, 604 N.W.2d 517. The exclusionary rule was developed as a safeguard of Fourth Amendment rights by requiring police to comply with the Fourth Amendment's reasonableness requirements as a precondition to the prosecution's use of evidence that police seized. Weeks v. United States, 232 U.S. 383, 398 (1914); Hoyer v. State, 180 Wis. 407, 417, 193 N.W. 89 (1923).
¶ 49. As Fourth Amendment and Article I, Section 11 jurisprudence developed, the exclusionary rule has become subject to exceptions. Both the United States Supreme Court's and our own decisions have established good faith as an exception to the exclusionary rule that permits prosecution's use of evidence even though police have transgressed the Fourth *312 Amendment and Article I, Section 11. United States v. Leon, 468 U.S. 897, 916, 920 (1984); State v. Eason, 2001 WI 98, ¶ 2, 245 Wis. 2d 206, 629 N.W.2d 625; Ward, 231 Wis. 2d 723, ¶ 3. These decisions are grounded in judicial assessment of the reasonableness of police actions under the totality of the circumstances. Davis, 131 S. Ct. at 2427-28; Eason, 245 Wis. 2d 206, ¶ 3.
¶ 50. As the parameters of the good faith exception to the exclusionary rule have developed both in the Supreme Court's and in our jurisprudence, so too have the judicial expressions of the policies that underlie the exclusionary rule. For example, in its recent decision in Davis, the Supreme Court expended considerable effort explaining the policies that must be considered with regard to the exclusionary rule and what facts are necessary before exclusion of evidence is even an option for courts to consider.
¶ 51. Davis involved the search of the passenger compartment of Stella Owens' vehicle, in which Willie Davis was a passenger, after both Owens and Davis were placed under arrest and secured. Davis, 131 S. Ct. at 2425-26. A gun was found in Davis' jacket; Davis was a convicted felon. Id. The search occurred before the Court's decision in Arizona v. Gant, 556 U.S. 332 (2009), which Alabama agreed set out new concerns relative to the search of Davis' jacket under the Fourth Amendment if Gant were applied to that search. Davis, 131 S. Ct. at 2431. However, while Gant provided a "newly announced rule of substantive Fourth Amendment law as a basis for seeking relief," Gant did not determine the remedy, i.e., whether suppression applies. Id.
¶ 52. The ultimate question presented in Davis was whether the good faith exception to the exclusion *313 ary rule permitted the prosecution to present evidence obtained in a search that complied with appellate precedent that pre-dated Gant. In deciding this question, the Court examined whether police had proceeded in objectively reasonable reliance on then-controlling precedent in conducting the search. Davis, 131 S. Ct. at 2423-24. After concluding that police had done so, the Court held that "searches conducted in objectively reasonable reliance on binding appellate precedent are not subject to the exclusionary rule." Id.
¶ 53. Although the Court's conclusion settled an important area of Fourth Amendment law, what is equally interesting about Davis is the Court's detailed descriptions of the showing that is required before the exclusionary rule can be considered. For example, the Court reaffirmed its holding in Herring v. United States, 555 U.S. 135 (2009), that the exclusionary rule's sole purpose is to deter future Fourth Amendment violations by police. Davis, 131 S. Ct. at 2426 (citing Herring, 555 U.S. at 141).[2]
¶ 54. The Court explained, "[r]eal deterrent value is a necessary condition for exclusion, but it is not a sufficient one. .. . The analysis must also account for the substantial social costs generated by the rule. . . . For exclusion to be appropriate, the deterrence benefits of suppression must outweigh its heavy costs." Id. at 2427 (cited and quoted cases omitted). When the error that leads to a Fourth Amendment violation is not that of police but that of a magistrate or judge who issues the warrant, the exclusionary rule *314 does not apply. "[P]unish[ing] the errors of judges is not the office of the exclusionary rule." Id. at 2428 (cited and quoted cases omitted). And finally, the Court explained, "in 27 years of practice under Leon's good-faith exception, we have 'never applied' the exclusionary rule to suppress evidence obtained as a result of nonculpable, innocent police conduct." Id. at 2429 (quoting Herring, 555 U.S. at 144).
¶ 55. Our decision in Eason discussed the development of the exclusionary rule. We began by reviewing Hoyer, which addressed the Fourth Amendment's requirements, and we also considered the exclusionary rule as developed within the parameters of Article I, Section 11 of the Wisconsin Constitution. Eason, 245 Wis. 2d 206, ¶¶ 41, 47 (citing Hoyer v. State, 180 Wis. 407, 193 N.W. 89 (1923). We noted that at least since confirmed in State v. Tompkins, 144 Wis. 2d 116, 423 N.W.2d 823 (1988), "the exclusionary rule has been a remedy, not a right" under Article I, Section 11 of the Wisconsin Constitution, as well as the Fourth Amendment. Eason, 245 Wis. 2d 206, ¶ 48. We also cited Ward as explaining that without police misconduct, evidence was admissible because "exclusion . . . would serve no remedial objective." Id., ¶ 49 (quoting Ward, 231 Wis. 2d 723, ¶ 63). Therefore, just as with the Fourth Amendment, Article I, Section 11 of the Wisconsin Constitution requires police misconduct as a necessary predicate to consideration of whether the exclusionary rule should be applied. Id.
¶ 56. So how does the above discussion fit within my concern set out in the first paragraph of this concurrence? It provides the necessary foundation to understand that the lead opinion in Hess cannot be combined with certain narrations of the majority opinion herein to conclude that the protection of judicial *315 integrity, standing alone without underlying police misconduct, is sufficient to permit courts to suppress relevant evidence.[3] Let me explain further, beginning with the problem set up by the lead opinion in Hess.[4]
¶ 57. First, while protection of judicial integrity was mentioned in Supreme Court decisions and in our decisions that preceded Leon's 1984 decision on good faith, protection of judicial integrity is no longer part of the Supreme Court's analysis. In that regard, the Supreme Court has unequivocally held that before the exclusionary rule may be employed as a remedy for a Fourth Amendment violation two conditions are required: (1) police misconduct and (2) a reviewing court's conclusion that "the deterrence benefits of suppression □ outweigh its heavy costs." Davis, 131 S. Ct. at 2427. Protection of judicial integrity is not part of the Supreme Court's Fourth Amendment analysis when the remedy sought is suppression of evidence. We came to the same conclusion in Eason as we addressed Article I, Section 11 of the Wisconsin Constitution. Eason, 245 Wis. 2d 206, ¶ 48. Accordingly, when an opinion relies on case law that has been refined through years of consideration by many courts *316 without discussing current jurisprudence on the issues presented, it does not accurately articulate the state of the law and may confuse the reader.
¶ 58. Second, the protection of judicial integrity was spoken of only in regard to its connection to police misconduct. See Conrad v. State, 63 Wis. 2d 616, 635, 218 N.W.2d 252 (1974) (explaining that judicial integrity could be compromised if unlawful police conduct was sanctioned by the use of evidence obtained in violation of the Fourth Amendment); Elkins v. United States, 364 U.S. 206, 222-23 (1960) (explaining that " [i] f the Government becomes a law-breaker, it breeds contempt for law").
¶ 59. Third, the lead opinion in Hess is the only Wisconsin Supreme Court decision, or United States Supreme Court decision, that I could locate that employs protection of judicial integrity as a stand-alone basis for employing the exclusionary rule. Justice Gableman tried to point out this concern, but the lead opinion in Hess did not heed his thoughtful dissent.
¶ 60. Fourth, because the majority opinion herein cites the lead opinion in Hess in a manner that could permit the reader to erroneously conclude that police misconduct is not a necessary predicate to the application of the exclusionary rule under both United States Supreme Court precedent and our own precedent, I have chosen to bring this issue forward. It is my hope that my colleagues both on the bench and at the bar will take heed of this trap for the unwary and recognize that the majority opinion is not setting a new standard that permits the exclusion of evidence without police misconduct. Accordingly, I respectfully concur.
*317 ¶ 61. I am authorized to state that Justices N. PATRICK CROOKS, ANNETTE KINGSLAND ZIEGLER and MICHAEL J. GABLEMAN join this opinion.

 See also State v. Hess, 2010 WI 82, ¶¶ 79-84, 327 Wis. 2d 524, 785 N.W.2d 568 (Gableman, J., dissenting), for a thorough discussion of Herring v. United States, 555 U.S. 135 (2009), and Herring's explanation of the considerations that courts must address when asked to apply the exclusionary rule.

 Majority op., ¶ 22, citing the lead opinion in Hess, 327 Wis. 2d 524, ¶ 47, in which there was no underlying police misconduct.

 In Hess, the court sat six because Justice Crooks did not participate. Hess, 327 Wis. 2d 524, ¶ 70. The lead opinion, authored by Justice Prosser, was joined by Chief Justice Abrahamson and Justice Bradley. Justice Ziegler joined the result reached by the lead opinion, but on a very limited basis. Id., ¶ 71 (Ziegler, J., concurring). Justice Gableman wrote a thoughtful dissent that took issue with the lead opinion's conclusion that application of the exclusionary rule could stand on a foundation of judicial integrity when there had been no police misconduct. Id., ¶¶ 75-97 (Gableman, J., dissenting).