STATE of Wisconsin,
Plaintiff-Respondent-Petitioner,

v.

Michael R. HESS, Defendant-Appellant.

Supreme Court

*No. 2008AP2231–CR. Oral argument March 2, 2010.
—Decided July 15, 2010.*

2010 WI 82

(Also reported in 785 N.W.2d 568.)

For the plaintiff-respondent-petitioner the cause was argued by *Aaron R. O'Neil,* assistant attorney general, with whom on the briefs was *J.B. Van Hollen,* attorney general.

For the defendant-appellant there was a brief by *George M. Tauscheck,* Milwaukee, and oral argument by *George M. Tauscheck.*

¶ 1. DAVID T. PROSSER, J. The issue presented in this case is whether the good-faith exception to the exclusionary rule permits the use of evidence obtained by a law enforcement officer in his execution of an arrest warrant that was void from the beginning because the warrant had no basis in fact or law. The State contends that suppression of evidence from a warrant issued solely as a result of judicial error would not further the purposes of the exclusionary rule.

¶ 2. We conclude that the good-faith exception to the exclusionary rule does not apply to a situation in which: (1) no facts existed that would justify an arrest without a warrant; (2) the civil arrest warrant issued by a circuit judge was void *ab initio*[1] because (a) it did not comply with any statute authorizing the court to issue a warrant; and (b) it was not supported by an oath or affirmation; and (3) the court issued the warrant without the benefit of verification of the facts or scrutiny of the procedure to ensure that the judge acted as a detached and neutral magistrate.

¶ 3. The warrant here was defective on its face. Nonetheless, we cannot reasonably attribute fault to the law enforcement officer who executed the warrant. Thus, suppressing evidence obtained as a result of the unauthorized, defective warrant is necessary to pre-

---

[1] *Ab initio* is defined as "[f]rom the beginning." *Black's Law Dictionary* 5 (8th ed. 2004).

serve the integrity of the judicial process. Consequently, we affirm the decision of the court of appeals, *State v. Hess,* 2009 WI App 105, 320 Wis. 2d 600, 770 N.W.2d 769.

## I. BACKGROUND AND PROCEDURAL HISTORY

¶ 4. In mid-2005 the defendant, Michael R. Hess, was arrested in Walworth County for operating a motor vehicle under the influence of an intoxicant, in violation of Wis. Stat. § 346.63(1)(a) (2007–08).[2] Hess was released on a $1,000 cash bond, which included various conditions including requirements that he "appear on all court dates" and "not possess or consume alcohol."

¶ 5. Hess subsequently pled guilty to the offense—a felony—and on January 12, 2007, the court ordered a presentence investigation (PSI). The order stated: "The Department of Corrections (Department) shall conduct a presentence investigation and prepare a report based on this investigation." It also set March 28, 2007, as the sentencing date. The court adjusted Hess's bond to a $10,000 signature bond with conditions of release similar to those in the original bond.

¶ 6. On February 8, 2007, the PSI author, a Department of Corrections agent, sent a letter to the circuit court. The letter explained that the agent had contacted Hess to schedule a meeting for February 1. Hess appeared at the meeting. The agent then reviewed a questionnaire that she had sent to Hess, noticing that portions of it were incomplete. When asked why he had not completed the questionnaire, Hess responded that it incorrectly listed the offense as his fifth OWI. The agent then asked Hess to return to the lobby to com-

---

[2] All subsequent references to the Wisconsin Statutes are to the 2007–08 version unless otherwise indicated.

plete the questionnaire, after which the interview would begin. Hess then left, which the agent presumed was because Hess was feeling ill.

¶ 7. The agent was unable to contact Hess after this meeting. She left a message with Hess's mother asking Hess to contact the agent by 4 p.m. that day. Hess did not respond, although he left a message with the agent's supervisor complaining about the agent. The agent's supervisor contacted Hess and directed him to return to complete the interview on February 6. He did not comply. The agent also was unable to contact Hess's attorney. Thus, the agent concluded her letter to the court with the following paragraph:

> It should be noted that to date, Mr. Hess has not attempted to contact this agent or [the agent's supervisor]. Therefore, due to the current situation and Mr. Hess' failure to cooperate, as outlined above, this agent does not foresee, at this time, that the Pre-Sentence Investigation ordered by the Court will be completed as requested. However, *it is respectfully requested that Mr. Hess be placed in custody, which would allow the Pre-Sentence Investigation to be completed.* Should the Court concur with this request, please notify our office of such.

(Emphasis added.)

¶ 8. On February 14, 2007, Circuit Judge John Race issued a "Bench Warrant Civil." This warrant directed "any law enforcement officer" to "[a]rrest and deliver to the sheriff the above named person because this person: . . . failed to: Meet with the Agent assigned to complete his Pre-Sentence Investigation." The warrant specified that Hess could be released upon "Completion of the Presentence Investigation Interview with the Agent assigned."

531

¶ 9. On March 7, 2007, Deputy Gilbert Maas of the Walworth County Sheriff's Department went to Hess's address, understanding that he "had a criminal felony arrest warrant for Michael Hess." When he arrived, Deputy Maas encountered Hess's father at the front door. After a brief conversation with Hess's father, Deputy Maas spoke with Hess himself and advised him that he had an arrest warrant for failure to appear in court. As the two men were walking to the squad car, Deputy Maas smelled the odor of intoxicants coming from Hess. He placed Hess under arrest, handcuffed him, did a pat-down search, and placed Hess in the back of the squad car.

¶ 10. Following normal procedure, Deputy Maas requested the dispatch center to check if Hess was on any conditions of bond. He was advised by the dispatch center that Hess was on bond for a sixth offense drunk driving with a minor in the vehicle and that one of the conditions of his bond was that he not possess or consume alcohol. Deputy Maas then transported Hess to Lakeland Medical Center to obtain a blood draw.

¶ 11. Hess was thereafter charged with felony bail jumping, in violation of Wis. Stat. § 946.49, for violating the bond requirement that he not possess or consume alcohol. He in turn filed a motion to suppress any evidence obtained as a result of the civil warrant. This included Deputy Maas's observations regarding Hess's sobriety on March 7. Hess argued that the civil bench warrant was invalid because it failed to conform to the requirements for a civil bench warrant in Wis. Stat. ch. 818. Specifically, he argued that (1) none of the enumerated situations in which an arrest may be made was present; and (2) the court was not furnished with an affidavit prior to issuing the warrant. He argued that

all evidence obtained on March 7 must be suppressed as the fruit of an illegal arrest.

¶ 12. The circuit court, Judge James Carlson presiding, held a hearing on the motion to suppress. The court declined to take testimony at the hearing because it deemed the legality of the warrant an issue of law. It then denied the motion, reasoning that the warrant was valid under either (1) the court's inherent power to issue warrants; or (2) the court's general statutory powers under Wis. Stat. § 757.01. The circuit court also stated that even if the warrant were not valid, the evidence was admissible under the good-faith exception to the exclusionary rule.

¶ 13. The case proceeded to a jury trial, at which Deputy Mass testified regarding his observations on March 7. The jury found Hess guilty. The court withheld sentence and placed Hess on three years probation. Hess appealed.

¶ 14. The court of appeals reversed and remanded after suppressing the evidence. *Hess,* 320 Wis. 2d 600, ¶ 3. The court analyzed the validity of the warrant, observing that the circuit court lacked the authority to issue a civil bench warrant because this was a criminal case. *Id.,* ¶ 11 (citing Wis. Stat. ch. 818). The court then noted that the court lacked the authority to issue a criminal bench warrant under Wis. Stat. § 968.09(1) because Hess did not fail to appear in court and was under no express or implied requirement to meet with the PSI writer. *Id.,* ¶ 12. Finally, the court said that the court had no authority to issue a warrant for contempt because the court did not order Hess to cooperate with the PSI writer. *Id.,* ¶ 13. The court concluded that, because warrants may be issued only pursuant to statute, the arrest warrant was invalid. *Id.,* ¶ 14 (citing *Wagner v. Lathers,* 26 Wis. 436, 438 (1870)).

¶ 15. The court next examined the applicability of the exclusionary rule. The court noted that the primary purpose of the rule was to deter unlawful police conduct while also preserving judicial integrity. *Hess,* 320 Wis. 2d 600, ¶ 16 (citing *Terry v. Ohio,* 392 U.S. 1, 12–13 (1968)). It cited *State v. Kriegbaum,* 194 Wis. 229, 232, 215 N.W. 896 (1927), for the proposition that the exclusionary rule prohibits evidence obtained pursuant to a warrant issued by a judge with no legal authority to issue such a warrant. *Hess,* 320 Wis. 2d 600, ¶¶ 17–18.

¶ 16. The court of appeals next turned to the good-faith exception to the exclusionary rule. It reasoned that the good-faith exception, as set out in *United States v. Leon,* 468 U.S. 897 (1984), and *State v. Eason,* 2001 WI 98, 245 Wis. 2d 206, 629 N.W.2d 625, "allow[s] the admission of evidence when law enforcement officers did what they were supposed to . . . but someone made an accidental clerical or technical error or the judge erred in concluding that the law enforcement's application fulfilled the requirements for a warrant." *Hess,* 320 Wis. 2d 600, ¶ 21. The court rejected the State's argument that the good-faith exception applies where the error is judicial, reasoning that the court in this case did not merely make an error, but acted outside the law. *Id.,* ¶ 22.

¶ 17. The court declared that the purpose of the good-faith exception is not simply to deter police misconduct, *id.,* ¶ 23, but also to preserve judicial integrity, meaning that courts must ensure "that our judicial process does not sanction, approve and be party to constitutional violations," *id.,* ¶ 25. Finally, the court examined cases in several different jurisdictions to conclude that "the good faith exception does not apply when a judge acts outside the law by issuing a warrant he or she had no authority whatsoever to issue." *Id.,*

¶ 26; *United States v. Scott,* 260 F.3d 512, 515 (6th Cir. 2001); *Bosteder v. City of Renton,* 117 P.3d 316, 323 (Wash. 2005); *State v. Wilson,* 618 N.W.2d 513, 520 (S.D. 2000).

¶ 18. The State petitioned this court for review, which we granted.

## II. STANDARD OF REVIEW

■■

¶ 19. We review a motion to suppress in two steps. *State v. Matejka,* 2001 WI 5, ¶ 16, 241 Wis. 2d 52, 621 N.W.2d 891. First, we uphold the circuit court's findings of historical fact unless they are clearly erroneous. *Id.* Second, we independently apply constitutional principles to those facts. *Id.* The constitutional sufficiency of a warrant and the application of the good-faith exception to the exclusionary rule are issues of law, which we review de novo. *See State v. Meyer,* 216 Wis. 2d 729, 744, 576 N.W.2d 260 (1998); *Eason,* 245 Wis. 2d 206, ¶ 9.

## III. DISCUSSION

¶ 20. The State concedes that the arrest warrant was invalid. As a result, the State's evidence of Hess's consumption and possession of alcohol—the evidence used to convict Hess of felony bail jumping—was obtained in violation of the Fourth Amendment to the United States Constitution and Article I, § 11 of the Wisconsin Constitution. Thus, the issue in this case is whether exclusion of that evidence is appropriate, or whether the court should permit use of the evidence on grounds that law enforcement obtained the evidence while acting in good-faith reliance on an arrest warrant that was void.

¶ 21. In resolving this issue, we begin by examining the statutory and constitutional warrant requirements and the deficiencies of the warrant at issue in this case. We then consider the historical development of the exclusionary rule and its good-faith exception in the federal courts as well as the parallel developments in Wisconsin. Finally, we apply these principles to determine whether exclusion is an appropriate remedy under the unusual facts of this case.

## A. Warrant Requirements in Wisconsin

¶ 22. The warrant in this case suffered from two primary defects: (1) the circuit court did not have statutory authority to issue a warrant for failure to meet with a PSI investigator; and (2) the warrant was not supported by an oath or affirmation.

## 1. Lack of Statutory Authority

¶ 23. The defendant contends and the State concedes that the arrest warrant was issued without authority.

¶ 24. Under appropriate circumstances, a circuit court has statutory authority to issue a (1) civil bench warrant, (2) a criminal bench warrant, or (3) a contempt warrant. To illustrate, had the circuit court *ordered* Hess to comply with the requests of the PSI writer or made his cooperation a condition of bond, the court might have ordered the defendant arrested for contempt (Wis. Stat. §§ 785.03(1)(b), 785.04(1)) or issued a criminal bench warrant (Wis. Stat. § 968.09(1)) after Hess failed to follow up with the PSI writer. Had Hess failed to appear before the court on a civil matter, a civil bench warrant would have been appropriate

(Chapter 818). Under the facts of this case, however, the warrant cannot be supported by any of these various statutes. The court issued what purported to be a civil bench warrant in a criminal case on the basis of Hess's failure to comply with an order the court never gave.

¶ 25. Civil arrests are governed by Wis. Stat. ch. 818. In a civil action, arrests are to be made only "as prescribed by this chapter." Wis. Stat. § 818.01(1). The statute then lists eight circumstances under which a defendant may be arrested pursuant to a civil bench warrant. Wis. Stat. § 818.02. The procedures under the chapter, in turn, require that an "order for the arrest of the defendant must be obtained from the court." Wis. Stat. § 818.03. The court may issue such an order "where it shall appear *by affidavit* that a cause of action exists, and that it is one of those mentioned in s. 818.02." Wis. Stat. § 818.04 (emphasis added). To execute the warrant, "*[t]he affidavit,* bond and order of arrest shall be delivered to the sheriff." Wis. Stat. § 818.07 (emphasis added).

■

¶ 26. Nothing in the record suggests that any of the circumstances authorizing a civil bench warrant under § 818.02 existed. No affidavit was provided to the circuit court demonstrating the existence of any of those circumstances, and consequently no affidavit accompanied the order for arrest delivered to the sheriff. Equally important, the matter pending before the court was criminal, not civil. Therefore, the court was without authority to issue a civil bench warrant.

■

¶ 27. The court may issue a warrant for the arrest of a defendant when a judge determines that there is probable cause to believe that a criminal offense has been committed and that the accused has committed it.

Wis. Stat. § 968.04. Hess's failure to cooperate with the agent in preparing a PSI was not a crime. In addition, under Wis. Stat. § 968.09(1), a court may issue a criminal arrest warrant when a witness fails to appear before the court as required "or violates a term of the defendant's . . . bond." Here, Hess had not failed to appear for a court date. Nor had he violated a term of his bond, because meeting with the PSI agent was not a condition of his bond. Therefore, the circuit court was without authority to issue an arrest warrant under § 968.09(1).

■

¶ 28. Finally, Wis. Stat. ch. 785 permits a circuit court to order imprisonment as a remedial sanction for contempt of court. Such contempt is defined in relevant part as intentional "[m]isconduct in the presence of the court" or "[d]isobedience, resistance or obstruction of the authority, process or order of a court." Wis. Stat. § 785.01(1)(a)-(b). There is nothing in the record to suggest that Hess satisfied either definition of contempt of court. In particular, he did not fail to comply with an explicit order of the court. Therefore, the arrest warrant was not authorized under ch. 785.

¶ 29. Because the circuit court had no authority to issue the warrant it did, exclusion is an appropriate remedy for evidence obtained as a result of that warrant. This court held in *Kriegbaum* that where a magistrate lacked authority to issue a warrant, the search conducted and evidence seized resulted in a constitutional violation. *Kriegbaum,* 194 Wis. at 232. In *Kriegbaum,* a justice of the peace issued a warrant authorizing a search of the person of the defendant, but the statutes authorized justices of the peace to issue warrants only to search a "particular house or place." *Id.* From these facts, the court held: "A search made

pursuant to warrant issued by a justice of the peace to whom the legislature had not granted the power to issue such a warrant is an unreasonable search and in violation of the defendant's constitutional rights." *Id.*

¶ 30. The court of appeals has applied the principle articulated in *Kriegbaum* in several cases. In these cases, the court held that evidence must be suppressed when it was obtained pursuant to a warrant issued by a court commissioner not authorized to issue search warrants. *State v. Loney,* 110 Wis. 2d 256, 258–60, 328 N.W.2d 872 (Ct. App. 1982); *State v. Grawien,* 123 Wis. 2d 428, 431, 367 N.W.2d 816 (Ct. App. 1985).[3] These cases, together with *Kriegbaum,* support the conclusion that exclusion is an appropriate remedy where evidence was obtained by a warrant issued by a magistrate who lacked the authority to issue the warrant.

¶ 31. This basic principle is reinforced by *State v. Popenhagen,* 2008 WI 55, 309 Wis. 2d 601, 749 N.W.2d 611. In *Popenhagen,* the state obtained evidence pursuant to subpoenas that did not satisfy the statutory requirement of a showing of probable cause. *Id.,* ¶¶ 7,

---

[3] *State v. Grawien* was decided after the United States Supreme Court had adopted a good-faith exception to the exclusionary rule. *State v. Grawien,* 123 Wis. 2d 428, 367 N.W.2d 816 (Ct. App. 1985). The Wisconsin Court of Appeals refused to apply the good-faith exception, which had not yet been adopted in Wisconsin, reasoning that doing so would overrule existing Wisconsin precedent. *Id.* at 432.

In *State v. Collins,* the court of appeals applied the good-faith exception to the exclusionary rule before this court adopted it. *State v. Collins,* 122 Wis. 2d 320, 329–30, 363 N.W.2d 229 (Ct. App. 1984). *Collins* does not contradict the basic principle from *State v. Kriegbaum,* 194 Wis. 229, 215 N.W. 896 (1927), because the court noted specifically that "the defect in the warrant did not stem from its being issued by a person other than a properly empowered neutral magistrate." *Id.* at 327.

¶ 13. We held that suppression was necessary because the means by which the state procured evidence was in violation of the procedures set out by statute. *Id.*, ¶ 97. Allowing documents obtained by a subpoena not complying with the statutory probable cause requirement would make the statutory safeguards meaningless. *Id.*, ¶ 61. By the same token, we held that suppression of an incriminating statement procured by use of those same documents was necessary to fully protect persons from the state's failure to comply with the statute. *Id.*, ¶ 85. Like the subpoenas in *Popenhagen,* the warrant in this case did not conform to the basic statutory requirements.[4]

¶ 32. These cases lead us to conclude that because the statutes did not authorize a warrant under these circumstances, the warrant was void *ab initio*. In such a situation, exclusion is an appropriate remedy. The State is no more entitled to the use of the evidence here than it would be had law enforcement placed Hess in custody without a warrant in circumstances where a warrant was required. The warrant had no basis in fact or law and was void from the moment it was issued; therefore, the evidence seized pursuant to Hess's arrest is subject to the exclusionary rule.

## 2. Lack of Oath or Affirmation

¶ 33. Both the United States and Wisconsin Constitutions provide that "no Warrants shall issue, but

---

[4] A concurring opinion employed a somewhat different analysis and concluded: "A circuit court cannot be denied the power to remedy an obvious and undisputed misuse of its judicial authority by the district attorney." *State v. Popenhagen,* 2008 WI 55, ¶ 109, 309 Wis. 2d 601, 749 N.W.2d 611 (Prosser, J., concurring).

upon probable cause, supported by Oath or affirmation . . . ." U.S. Const. amend. IV; Wis. Const. art. 1, § 11. We have declined to consider this requirement a mere technicality, but have upheld its basic substantive importance, stating:

> An oath is a matter of substance, not form, and it is an essential component of the Fourth Amendment and legal proceedings. The purpose of an oath or affirmation is to impress upon the swearing individual an appropriate sense of obligation to tell the truth. An oath or affirmation to support a search warrant reminds both the investigator seeking the search warrant and the magistrate issuing it of the importance and solemnity of the process involved. An oath or affirmation protects the target of the search from impermissible state action by creating liability for perjury or false swearing for those who abuse the warrant process by giving false or fraudulent information. An oath preserves the integrity of the search warrant process and thus protects the constitutionally guaranteed fundamental right of people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures.

*State v. Tye,* 2001 WI 124, ¶ 19, 248 Wis. 2d 530, 636 N.W.2d 473 (footnotes omitted).

¶ 34. When a warrant fails to comply with the constitutional oath or affirmation requirement, we have considered it to be "invalid when issued." *Id.,* ¶ 23. In *Tye* the warrant was "facially defective because no *sworn* affidavit was attached," although the court held and the parties stipulated that the affidavit, if true and sworn, would have provided probable cause for the search. *Id.,* ¶¶ 5, 7. We contrasted the warrant's deficiency with a case where the error was in the street number of the premises to be searched. *State v. Nicholson,* 174 Wis. 2d 542, 544, 497 N.W.2d 791 (Ct. App. 1993). In *Nicholson,*

541

however, this error was only a "technical irregularity not affecting the substantial rights of the defendant," allowing the warrant itself to be valid when issued. *Tye,* 248 Wis. 2d 530, ¶ 23.

■■

¶ 35. Here, the arrest warrant was not accompanied by an affidavit, sworn or unsworn. The absence of an affidavit violated Wis. Stat. §§ 818.04 and 818.07. The absence of a *sworn* affidavit violated the state and federal constitutions and rendered evidence obtained as a result of the warrant inadmissible. *Tye,* 248 Wis. 2d 530, ¶ 3. An oath or affirmation is necessary "to induce an honest belief in the mind of the magistrate" that probable cause exists. *Kraus v. State,* 226 Wis. 383, 386 (1937) (citing *State v. Baltes,* 183 Wis. 545, 552, 198 N.W. 282 (1924) (suppressing evidence because no sworn testimony existed to support the warrant)).

■■

¶ 36. The oath or affirmation and probable cause requirements apply equally to arrest warrants as well as search warrants. *Giordenello v. U.S.,* 357 U.S. 480, 485–86 (1958). The sworn complaint or affidavit is necessary to allow the judge or magistrate to make an informed determination regarding the existence of probable cause. *Id.* at 486. The test for the sufficiency of a sworn complaint or affidavit is whether it can "support the independent judgment of a disinterested magistrate." *Whiteley v. Warden, Wyo. State Pen.,* 401 U.S. 560, 565 (1971).

¶ 37. Without an affidavit accompanied by oath or affirmation, the warrant failed to meet a basic constitutional requirement and was void *ab initio. See Tye,* 248 Wis. 2d 530, ¶ 13. The absence of any affidavit should have put both the court and the sheriff's department on notice of a problem.

## B. The Exclusionary Rule and Good-Faith Exception

¶ 38. Although we hold that the exclusionary rule applies because the warrant was void when issued, the State asks us to extend the good-faith exception to the exclusionary rule in Wisconsin to render evidence admissible when it is seized pursuant to a warrant issued without statutory authority. To determine whether such an extension of the good-faith exception is appropriate, we begin by examining the historical background of the exclusionary rule in the federal courts and in Wisconsin. We then apply these principles to the situation in which a circuit court issues a warrant without statutory authority and unsupported by an oath or affirmation.

### 1. The Federal Exclusionary Rule

¶ 39. The origin of the Fourth Amendment exclusionary rule can be traced to the Supreme Court's decision in *Weeks v. United States,* in which the Court considered a defendant's timely objection to the warrantless seizure of evidence from his residence. *Weeks v. United States,* 232 U.S. 383, 387–88 (1914). The import of the Fourth Amendment, it explained, was "to put the courts . . . under limitations and restraints as to the exercise of [their] power and authority." *Id.* at 391–92. It concluded that unlawful seizures "should find no sanction in the judgments of the courts which are charged at all times with the support of the Constitution." *Id.* at 392. Accordingly, the Court held that the trial court erred by refusing the return of the papers and by allowing them to be used at trial. *Id.* at 398.

¶ 40. Initially, the exclusionary rule created in *Weeks* applied only to federal officers and federal courts. In *Wolf v. Colorado,* the Court acknowledged that the

Fourth Amendment protections are applied to the states through the Due Process Clause of the Fourteenth Amendment, but it declined to extend the exclusionary rule to the states on grounds that the rule was not required by the text of the Constitution or by virtue of legislation. *Wolf v. Colorado*, 338 U.S. 25, 27–28 (1949). Rather, exclusion was "a matter of judicial implication." *Id.* at 28. Instead of imposing the exclusionary rule on the states' administration of justice, the Court chose to allow the states to pursue other methods that might be equally effective solutions to the constitutional problem. *Id.* at 31.

¶ 41. Twelve years later, however, the Court reconsidered this view and overruled *Wolf,* holding that "all evidence obtained by searches and seizures in violation of the Constitution is . . . inadmissible in a state court." *Mapp v. Ohio*, 367 U.S. 643, 655 (1961). To hold, as *Wolf* did, that the Fourth Amendment as applied to the states does not impose consequences for violations would be "to grant the right but in reality to withhold its privilege and enjoyment." *Id.* at 656. In response to criticism that the exclusionary rule results in letting the guilty go free, the Court reaffirmed an earlier holding from *Elkins v. United States:*

> "[T]here is another consideration—the imperative of judicial integrity." The criminal goes free, if he must, but it is the law that sets him free. Nothing can destroy a government more quickly than its failure to observe its own laws, or worse, its disregard of the charter of its own existence.

*Mapp,* 367 U.S. at 659 (quoting *Elkins v. United States,* 364 U.S. 206, 222 (1960)) (internal citations omitted). The Court went on to emphasize that applying the exclusionary rule to the states "is not only the logical dictate of prior cases, but it also makes very good sense.

There is no war between the Constitution and common sense." *Mapp,* 367 U.S. at 657.

¶ 42. The Court elaborated on the purposes and functions of the exclusionary rule in the context of police officer "stop and frisk" seizures in *Terry v. Ohio.* In *Terry* the Court held that excluding evidence seized in violation of the Fourth Amendment seeks to deter unlawful police conduct while serving another "vital function—'the imperative of judicial integrity.' " *Terry,* 392 U.S. at 12–13 (citing *Elkins,* 364 U.S. at 222). The Court ultimately concluded that the police officer's actions in *Terry* were proper under the Fourth Amendment, but emphasized that "[c]ourts which sit under our Constitution cannot and will not be made party to lawless invasions of the constitutional rights of citizens." *Terry,* 392 U.S. at 13.

¶ 43. Sixteen years later, the Supreme Court modified the exclusionary rule to provide a good-faith exception when a police officer relies in good faith on a facially valid warrant that was issued by a neutral and detached magistrate. *Leon,* 468 U.S. at 905. Crucial to the Court's analysis was balancing the interests of preserving probative evidence in criminal trials and removing any incentive for official misconduct or constitutional violations. *Id.* at 900–01.

¶ 44. The Court tempered the good-faith exception by identifying four circumstances in which the good faith reliance of an officer will not save unconstitutionally obtained evidence: (1) where the facially valid affidavit is based upon knowingly or recklessly made false statements; (2) where the issuing judge or magistrate "wholly abandoned his judicial role;" (3) where the affidavit was insufficient to allow the magistrate to make a determination of probable cause; and (4) where the officer

cannot demonstrate objective good faith because the affidavit supporting the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 923.

¶ 45. Since *Leon,* the Court has continued to reexamine the boundaries of the good-faith exception. In *Illinois v. Krull* the Court extended the good-faith exception to allow evidence seized pursuant to a state statute later deemed unconstitutional. *Illinois v. Krull,* 480 U.S. 340, 349 (1987) (relying on Leon, 468 U.S. at 920–21, for the proposition that the deterrence function of the rule would not be furthered where the police officer's reliance was objectively reasonable). The Court later declined to apply the exclusionary rule to clerical errors by court employees where law enforcement's behavior was reasonable. *Arizona v. Evans,* 514 U.S. 1, 15–16 (1995). Most recently, the Court considered whether a clerical error by police personnel should likewise be exempted from the scope of the exclusionary rule. *Herring v. United States,* 555 U.S. 135, 129 S. Ct. 695, 703 (2009). Although the Court rejected a categorical exception similar to the one in *Evans,* it held that the police conduct in *Herring* did not warrant exclusion because it "was the result of isolated negligence attenuated from the arrest." *Id.* at 698.

## 2. The Exclusionary Rule in Wisconsin

¶ 46. In Wisconsin, the exclusionary rule dates back to 1923, when this court held that, for "the Bill of Rights as embodied in constitutions to be of substance rather than mere tinsel," a conviction may not rest on unlawfully seized evidence. *Hoyer v. State,* 180 Wis. 407, 415, 193 N.W. 89 (1923). Although the court acknowledged that other states had reached contrary conclu-

sions, it found "no reason in logic, justice, or in . . . fair play" why a court of justice should allow the use of evidence obtained through a plain violation of the constitution. *Id.* at 417. The court instead elected to follow federal precedent, which at that time considered the unlawful seizure of evidence analogous to compelled self-incrimination under the Fifth Amendment. *Id.* at 415–16. The constitutional guarantee of security against unreasonable search and seizure cannot be discarded in favor of a conviction obtained by the violation of that same guarantee. *Id.* at 417. "Such a cynical indifference to the state's obligations should not be judicial policy." *Id.*

¶ 47. In subsequent cases, the court continued to follow the United States Supreme Court in the development and application of the exclusionary rule. Echoing the Supreme Court's language in *Elkins,* the court identified two rationales underlying the rule: deterrence of unlawful police conduct and assurance of judicial integrity. *Conrad v. State,* 63 Wis. 2d 616, 635, 218 N.W.2d 252 (1974). In *Conrad* we recognized that both purposes have their limits in reality: deterrence cannot be achieved where persons are never charged or tried, and the integrity of judicial process may be compromised when relevant evidence is excluded from the truth-finding process. *Id.* Imperfect though the remedy might be, the court recognized the important principles underlying the rule's development and concluded that "[c]ourts and judges should not sanction violations of the constitution." *Id.*[5]

---

[5] "Courts and judges should not sanction violations of the constitution. The integrity of the judicial process must be inviolate and free from reliance upon transgressions against the constitution which every judge has taken the oath to uphold." *Conrad v. State,* 63 Wis. 2d 616, 635–36, 218 N.W.2d 252 (1974).

¶ 48. In *State v. Brady* the court was asked to reconsider *Hoyer* in light of the Supreme Court's decision in *Leon*. *State v. Brady,* 130 Wis. 2d 443, 453, 388 N.W.2d 151 (1986). Brady challenged the validity of a material witness arrest warrant issued by a judge in a John Doe proceeding, arguably without statutory authority. *Id.* at 449–50. The court did not address whether the judge had authority to issue the warrant, concluding that even if the judge had authority, the warrant was void because it was lacking in probable cause. *Id.* at 453. The court declined to adopt the good-faith exception because the circumstances of the case fell within one of the four limiting situations identified in *Leon*: the warrant was so lacking in indicia of probable cause that the question of "good faith" was not implicated. *Id.* at 454. Justice Abrahamson noted in a concurrence:

> It is not clear whether *Leon* . . . appl[ies] only to cases in which the magistrate has authority to issue a warrant but there was lack of probable cause or a technical error . . . or to cases such as this one in which the magistrate has no authority whatsoever to issue the warrant.

*Id.* at 455 (Abrahamson, J., concurring). Accordingly, the court left the good-faith exception for another day.

¶ 49. The first decision of this court to recognize a good-faith exception did so in the limited context in which law enforcement relied on controlling law at the time of the search, although that law was subsequently overruled. *State v. Ward,* 2000 WI 3, 231 Wis. 2d 723, 604 N.W.2d 517. In *Ward,* law enforcement had properly relied on a warrant containing no-knock entry authorization, pursuant to the rule articulated by this court in *State v. Stevens,* 181 Wis. 2d 410, 424–25, 511 N.W.2d

591 (1994), and *State v. Richards,* 201 Wis. 2d 845, 549 N.W.2d 218 (1996). *Ward,* 231 Wis. 2d at 743. The United States Supreme Court issued an opinion rejecting our exception to the rule of announcement three months after the search of Ward's home occurred. *Richards v. Wisconsin,* 520 U.S. 385, 388 (1997). Because the police officers involved reasonably and in good faith relied upon the rule as it existed when the warrant was issued and executed, the court adopted the United States Supreme Court's reasoning in *Illinois v. Krull* and recognized a limited exception to the exclusionary rule. *Ward,* 231 Wis. 2d 723, ¶¶ 51–52.

¶ 50. The following year, in *Eason,* the court adopted the good-faith exception articulated in Leon. The search warrant in *Eason* provided authorization for a no-knock entry, authorization that this court determined to be unjustified by the attached affidavit. *Eason,* 245 Wis. 2d 206, ¶ 1. The court carefully reviewed the Court's rationale in Leon, and ultimately concluded "the good faith exception applies where the State has shown, objectively, that the police officers reasonably relied upon a warrant issued by an independent magistrate." *Id.,* ¶ 3.

¶ 51. The court made clear that *Eason* did not mark the end of the exclusionary rule in Wisconsin, noting: "We would no more overrule *Hoyer* than we could overrule *Mapp v. Ohio." Id.,* ¶ 57. The court also held that, for the good-faith exception to apply, the state must show that the process of obtaining the search warrant included: (1) a significant investigation; and (2) review by a government attorney or police officer trained in and knowledgeable of probable cause requirements. *Id.,* ¶ 74. Noting that the probable cause determination was "a close case," *id.,* ¶ 1, and that the

officers relied upon a search warrant "issued by a detached and neutral magistrate," the court concluded that the good-faith exception applied to permit the use of the evidence, *id.,* ¶ 74.

¶ 52. Not long after *Eason* was decided, the state asked this court to extend the good-faith exception in the context of affidavits lacking a sworn affidavit. *Tye,* 248 Wis. 2d 530, ¶ 24. The court declined to extend the good-faith exception this far, holding: "The exclusionary rule applies when no oath or affirmation supports a search warrant; 'it is plainly evident that a magistrate or judge had no business issuing a warrant.' " *Id.* (quoting *Illinois v. Gates,* 462 U.S. 213, 264 (1983) (White, J., concurring)). Despite the conclusion that the warrant would have satisfied probable cause requirements had the affidavit been properly sworn, the court held that the evidence was inadmissible. *Id.,* ¶¶ 5, 7.

3. Application of the Exclusionary Rule and Good-Faith Exception

¶ 53. Our historical overview of the exclusionary rule and good faith exception demonstrates how this court has followed the development and application of the exclusionary rule and good-faith exception articulated by the United States Supreme Court.[6] Unfortunately, the facts of this case are not a neat fit with the

_____

[6] *See State v. Eason,* 2001 WI 98, 245 Wis. 2d 206, 629 N.W.2d 625 (following *United States v. Leon,* 468 U.S. 897 (1984), in recognizing a good-faith exception to the exclusionary rule); *State v. Ward,* 2000 WI 3, ¶ 50, 231 Wis. 2d 723, 604 N.W.2d 517 (applying the good-faith exception from *Illinois v. Krull,* 480 U.S. 340, 349 (1987) to law enforcement reliance on laws in existence at the time the warrant was issued); *State v.*

traditional framework under the Fourth Amendment, the exclusionary rule, or the good-faith exception. The Supreme Court has never addressed whether the good-faith exception can save evidence seized pursuant to a warrant that the judge had no authority to issue. Applying the traditional principles of the exclusionary rule and the good-faith exception, we decline to extend the good-faith exception to the facts of this case.

¶ 54. Both federal and Wisconsin case law concerning the exclusionary rule and the good-faith exception start from the presumption of a warrant issued by "a detached and neutral magistrate." *Leon,* 468 U.S. at 900; *Eason,* 245 Wis. 2d 206, ¶ 2; *see also Gates,* 462 U.S. at 240; *Evans,* 514 U.S. at 11; *Krull,* 480 U.S. 340, 348 (1987). Most of the case law in this area addresses search warrants issued upon affidavit by law enforcement, focusing the discussion of the judge or magistrate's role in this process on whether she abdicated her role in the process by serving as a rubber stamp for law enforcement. *See Gates,* 462 U.S. at 239 (discussing a magistrate's role in issuing a warrant).

*Brady,* 130 Wis. 2d 443, 454, 388 N.W.2d 151 (1986) (relying on the categories identified in *Leon,* 468 U.S. at 923, as being outside the scope of the good-faith exception); *Conrad,* 63 Wis. 2d at 635 (citing *Elkins v. United States,* 364 U.S. 206, 222 (1960), for the importance of judicial integrity); *Hoyer v. State,* 180 Wis. 407, 415–16, 193 N.W.2d 89 (1923) (following *Bram v. U.S.,* 168 U.S. 532 (1897) and *Weeks v. United States,* 232 U.S. 383, 387–88 (1914)). *Eason* represents the only case in which this court deviated from the United States Supreme Court's jurisprudence by imposing two additional requirements upon the state in order to admit evidence unlawfully obtained. *Popenhagen,* 309 Wis. 2d 601, ¶ 215 (Roggensack, J., dissenting). We have never expanded the good-faith exception nor limited the exclusionary rule in the absence of United States Supreme Court precedent, and we decline to do so here.

¶ 55. We have held that the "detached and neutral magistrate" requirement is necessary to "interpose the impartial judgment of a judicial officer between the citizen and the police and also between the citizen and the prosecutor, so that an individual may be secure from an improper search or an improper arrest." *Walberg v. State,* 73 Wis. 2d 448, 455, 243 N.W.2d 190 (1976). In this instance, the court did not have the opportunity to act as a detached and neutral magistrate, because there was no prosecutor or police action to evaluate. In most situations, a sworn affidavit is necessary for a court to act as a detached and neutral magistrate when issuing an arrest warrant. *See Giordenello,* 357 U.S. at 485 (probable cause and oath or affirmation requirements apply to arrest warrants); *Tye,* 248 Wis. 2d 530, ¶ 21 (noting the "historical importance of the oath or affirmation as the basis upon which a neutral magistrate issues a warrant"). This is true even for warrants issued in civil cases. *See Soldal v. Cook County,* 506 U.S. 56, 67 (1992) (Fourth Amendment protections apply in the civil context).

¶ 56. In *Eason* the court required additional evidence of a serious and careful process for obtaining a search warrant before permitting the good-faith exception to be invoked. The State does not argue that the *Eason* requirements have been met; instead it asks us to find them inapplicable under the circumstances.

¶ 57. The dissent points out that the additional *Eason* requirements do not apply to bench warrants issued without police involvement. Dissent, ¶ 94. We acknowledge that the *Eason* requirements for the good-faith exception were crafted for search warrants and may not be applicable to all warrants for arrest, especially in situations where a law enforcement agency is not in the picture.

¶ 58. It is true that bench warrants do not require *police* involvement. However, civil bench warrants, like the one issued in this case, require an affidavit demonstrating the existence of the requisite cause of action, and a person may not be arrested as a remedial sanction for contempt without notice and hearing. Wis. Stat. §§ 818.03, 785.03(1)(a), 785.04(1)(b). These statutory requirements are intended to put the judge in a position to act as a detached and neutral magistrate with the proper facts placed before him in a manner sufficiently reliable to satisfy the constitutional requirements.

¶ 59. A judge may issue an arrest warrant for failure to appear or may summarily imprison a defendant as a punitive sanction for contempt in the "actual presence of the court" without a sworn affidavit. Wis. Stat. §§ 968.09, 785.03. A judge may do this constitutionally because the judge has personal knowledge of the facts justifying the arrest. *See United States v. Evans,* 574 F.2d 352, 355 (6th Cir. 1978) (discussing a personal knowledge exception to the oath or affirmation requirement).

¶ 60. Thus, the *Eason* requirements do not necessarily control when applying the good-faith exception to bench warrants, but they implicate relevant considerations. A judge cannot act as a detached and neutral magistrate without being presented with sufficient, reliable facts. This basic principle is why we take the oath or affirmation requirement so seriously. *See Tye,* 248 Wis. 2d 530, ¶ 20 (describing the "historical importance of the oath or affirmation as the basis upon which a neutral magistrate issues a warrant"). Here, there was no significant investigation or review by a government attorney. The judge acted without verified input or objective feedback. He apparently acted on impulse without the facts being properly presented to him.

553

Under these circumstances, the resulting warrant, which was void *ab initio,* cannot be saved by law enforcement good-faith.

¶ 61. Case law on the good-faith exception generally proceeds from a warrant that was valid when issued, but later determined to be lacking in probable cause. *See, e.g., Leon,* 468 U.S. at 903; *Eason,* 245 Wis. 2d 206, ¶ 55. As we have already noted, in this case the warrant was void *ab initio.* It had no basis in fact or law. Other courts have reached the conclusion that good faith on the part of law enforcement has no bearing where a warrant is void *ab initio. See United States v. Neering,* 194 F. Supp. 2d 620, 626–28 (E.D. Mich. 2002) (suppression of evidence pursuant to a warrant that was void *ab initio* because the magistrate's appointment had not been properly completed); *Wilson,* 618 N.W.2d at 515 (good-faith exception does not apply where warrant was issued by judge who had no jurisdiction in that judicial circuit); *United States v. Scott,* 260 F.3d 512, 513 (6th Cir. 2001) (good-faith exception cannot cure a constitutional violation because the warrant issued by a retired judge was void *ab initio*).

¶ 62. Our holdings in *Brady* and *Tye* further underscore the importance, as a preliminary matter, of meeting the constitutional requirements of oath or affirmation and probable cause. *Brady,* 130 Wis. 2d at 454; *Tye,* 248 Wis. 2d 530, ¶ 24. When a court issues a warrant in complete absence of one of these basic constitutional requirements, the state cannot rely on the good faith of the executing officer to overcome a judicial mistake. We have no reason to question the intentions of the circuit judge, but like the judge in *Tye,* he "had no business issuing a warrant" under these circumstances. *Id.*

¶ 63. The goal of judicial integrity warrants some clarification. The court of appeals concluded that "[t]he act of issuing a warrant without any authority whatsoever to do so . . . is not a 'judicial' act and the attempt to clothe it as such is contrary to judicial integrity." *Hess,* 320 Wis. 2d 600, ¶ 30. The purpose of preserving judicial integrity is often tied directly to the purpose of deterring unlawful police conduct. *Leon,* 468 U.S. at 921 n.22 (citing *United States v. Janis,* 428 U.S. 433, 458 n.35 (1976)). But judicial integrity is implicated when a judge issues a warrant that does not comply with statutory requirements and is not supported by the constitutionally required oath or affirmation. In this case, there was no affidavit at all. In *Leon,* the Supreme Court held that *"[a]bsent unusual circumstances,* when a Fourth Amendment violation has occurred because the police have reasonably relied on a warrant issued by a detached and neutral magistrate but ultimately found to be defective, 'the integrity of the courts is not implicated.' " *Leon,* 468 U.S. at 921 n.22 (quoting *Gates,* 462 U.S. at 259 n.14 (White, J., concurring)) (emphasis added). Even were we to hold that the circuit court fulfilled Leon's "detached and neutral magistrate" requirement, this case presents those "unusual circumstances." The constitutional violation was initiated when the court issued a warrant without authority to do so, and the officer's good-faith reliance on that warrant cannot save the resulting evidence.[7]

¶ 64. The dissent postulates that the Supreme Court abandoned judicial integrity in *Janis,* 428 U.S.

---

[7] Other courts have articulated this same concern in terms of the court's jurisdiction, noting that "[a]ctions by a police officer cannot be used to create jurisdiction, even when done in good faith." *State v. Wilson,* 618 N.W.2d 513, 520 (S.D. 2000).

433. Yet, even the dissent's quote from *Janis* refers to the "*[p]rimary meaning of 'judicial integrity.'*" *Id.* at 458 n. 35 (emphasis added). The dissent overlooks the language leading up to the *Janis* quote: "To the extent that recent cases state that deterrence is the prime purpose of the exclusionary rule, and that 'judicial integrity' is a *relevant, albeit subordinate factor,* we hold that *in this case* considerations of judicial integrity do not require exclusion of the evidence." *Id.* (emphasis added). This language cannot reasonably be read to abandon judicial integrity and restrict the exclusionary rule solely to deterrence of law enforcement officers. The Court's statement in Leon that judicial integrity is not implicated when police rely in good faith on a warrant, "absent unusual circumstances," preserves judicial integrity as a secondary consideration when applying the exclusionary rule. *Leon,* 468 U.S. at 921 n.22 (quoting *Gates,* 462 U.S. at 259 n.14 (White, J., concurring)).

¶ 65. We do not read recent cases such as *Herring* and *Evans* as withdrawing the language from *Janis* and *Leon* suggesting that judicial integrity is a secondary consideration that may come to the fore in unusual cases. These cases simply refused to exclude evidence based on judicial integrity in the specific facts of those cases. None of the recent cases cited by the dissent involved a warrant that was per se void *ab initio* because the judge lacked statutory authority to issue it. Nor do they involve a fundamental defect like the complete absence of a constitutionally required sworn affidavit, which renders the warrant "invalid when issued." *Tye,* 248 Wis. 2d 530, ¶ 23.

¶ 66. The consideration of judicial integrity must take into account the nature of the defects in the warrant. The defects in the warrant here were not

technical irregularities or errors of judgment: The defendant's failure to cooperate with the agent in preparing a PSI was not a crime. It did not violate a court order, and it did not violate a condition of his bond. He could not have been arrested without a warrant because the defendant did not commit a crime. *See* Wis. Stat. § 968.07(1)(d); *State v. Lange,* 2009 WI 49, ¶ 19, 317 Wis. 2d 383, 766 N.W.2d 551 ("A warrantless arrest is not lawful except when supported by probable cause."). The bench warrant civil that the court issued was void *ab initio* because it did not comply with any statute authorizing the court to issue a warrant. It was defective on its face because it was a civil warrant in a criminal case. It was not supported by a constitutionally required oath or affirmation. This should have been obvious because there was no affidavit at all. No law enforcement officer or agency made a significant investigation to support an affidavit; no government attorney or informed officer scrutinized the warrant for probable cause. In short, the warrant was void *ab initio* because it was unauthorized and defective in nearly every respect.

¶ 67. While it is easy to understand why a clerk's failure to remove a warrant from the computer system does not threaten the integrity of our judicial system, *see Arizona v. Evans,* 514 U.S. at 4–5, a warrant issued without statutory authority in the complete absence of the basic constitutional requirement of oath or affirmation raises more serious questions. As stated by the Sixth Circuit, "*Leon* presupposed that the warrant was issued by a magistrate or judge clothed in the proper legal authority . . . Indeed, *Leon* noted that it left 'untouched . . . the various requirements for a valid warrant.'" *Scott,* 260 F.3d at 515 (internal quotes and citations omitted). When fundamental constitutional

and statutory requirements for issuing a warrant are completely absent, the good-faith exception cannot save the resulting unconstitutionally obtained evidence.

## IV. CONCLUSION

¶ 68. We conclude that the good-faith exception to the exclusionary rule does not apply to a situation in which: (1) no facts existed that would justify an arrest without a warrant; (2) the civil arrest warrant issued by a circuit judge was void *ab initio* because (a) it did not comply with any statute authorizing the court to issue a warrant; and (b) it was not supported by an oath or affirmation; and (3) the court issued the warrant without the benefit of verification of the facts or scrutiny of the procedure to ensure that the judge acted as a detached and neutral magistrate.

¶ 69. The warrant here was defective on its face. Nonetheless, we cannot reasonably attribute fault to the law enforcement officer who executed the warrant. Thus, suppressing evidence obtained as a result of the unauthorized, defective warrant is necessary to preserve the integrity of the judicial process. Consequently, we affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 70. N. PATRICK CROOKS, J., did not participate.

¶ 71. ANNETTE KINGSLAND ZIEGLER, J. (*concurring*). I join the majority opinion's conclusion that the evidence here must be suppressed, *see* majority op., ¶ 32, but my conclusion is based on the fact that this warrant was per se void *ab initio*. This warrant was per se void *ab initio* because the circuit court absolutely lacked the authority to issue this warrant, regardless of the presentence investigation (PSI) author's request.

*See id.,* ¶ 7. That is, the circuit court issued what purported to be a civil bench warrant in a criminal case on the basis that the PSI author informed the court that Hess failed to stay and complete a PSI interview. However, the circuit court had never previously ordered Hess to participate in that interview, and no statute or other authority requires a defendant to participate in such an interview. I write separately to emphasize that in this case, the circuit court's complete lack of authority to issue this warrant under these circumstances is most akin to the magistrate's lack of authority to issue the search warrant in *State v. Kriegbaum,* 194 Wis. 229, 232, 215 N.W. 896 (1927), and the court commissioners' lack of authority to issue the search warrants in *State v. Loney,* 110 Wis. 2d 256, 260, 328 N.W.2d 872 (Ct. App. 1982), and *State v. Grawien,* 123 Wis. 2d 428, 430–31, 367 N.W.2d 816 (Ct. App. 1985). In those cases, the remedy was to exclude the evidence obtained based on the warrants that were per se void *ab initio. See Kriegbaum,* 194 Wis. at 232; *Loney,* 110 Wis. 2d at 260; *Grawien,* 123 Wis. 2d at 433.

¶ 72. I continue to agree with the application of the good faith exception to the exclusionary rule regarding the defective warrants in *United States v. Leon,* 468 U.S. 897 (1984) (search warrant unsupported by probable cause), and *State v. Eason,* 2001 WI 98, 245 Wis. 2d 206, 629 N.W.2d 625 (affidavit submitted in support of search warrant did not justify authorizing a no-knock entry).

¶ 73. While a per se void *ab initio* warrant is always defective, a defective warrant is not always per se void *ab initio.* The line must be drawn somewhere. I draw it in a case such as this one, in which the warrant is not just defective, but rather, it is per se void *ab initio.* "Leon could not have been intended to save a warrant that was *per se* invalid." *United States v. Neering,* 194 F.

Supp. 2d 620, 627 (E.D. Mich. 2002) (citing *United States v. Scott,* 260 F.3d 512, 515 (6th Cir. 2001)).

¶ 74. For the foregoing reason, I respectfully concur.

¶ 75. MICHAEL J. GABLEMAN, J. (*dissenting*). I part with the majority because it departs from the United States Supreme Court's well-articulated principles governing exclusion of evidence resulting from unlawful searches and seizures. First, the majority begins with a presumption of exclusion and looks for an exception to that presumption in contravention of the pronouncements of the United States Supreme Court. Second, it justifies its application of the exclusionary rule on the grounds of judicial integrity—a purpose long since discarded by the United States Supreme Court—while ignoring the singular animating purpose of exclusion: deterrence of police misconduct. Finally, the majority leaves confusion as to whether and when the *Eason* requirements are applicable to the issuance of bench warrants.

¶ 76. I follow the dictates of the United States Supreme Court: I begin with a presumption of admissibility and then address whether the remedy of exclusion is appropriate. *Herring v. United States,* 555 U.S. 135, 129 S. Ct. 695, 700–01 (2009). I conclude that exclusion is unwarranted in this case because it will not serve to deter police misconduct and its application here cannot justify the "substantial social costs" exclusion imposes. *Id.*

I. THE EXCLUSION EXCEPTION

¶ 77. One year ago, the United States Supreme Court issued a landmark opinion summarizing and clarifying its prior case law regarding exclusion of

evidence resulting from unlawful searches and seizures. Exclusion, the Court explained, is an "extreme sanction" that should only be applied as a "last resort." *Id.* at 700.

¶ 78. "[I]mportant principles [] constrain application of the exclusionary rule," the Court explained. *Id.* Exclusion is not a right, nor is it a necessary consequence of a Fourth Amendment violation. *Id.* The remedy of exclusion should apply *only* where it accomplishes the goal of deterrence, and only if the benefits of deterrence outweigh the substantial social costs of exclusion—most significantly, the toll upon the truth-seeking and law enforcement objectives underlying the criminal justice system. *Id.* at 700–01.

¶ 79. The United States Supreme Court has made clear that exclusion is aimed at deterrence of police misconduct, *not judicial misconduct.*[1] *Id.* at 701. The Court explained that judicial employees "were unlikely to try to subvert the Fourth Amendment," and that application of the exclusionary rule in cases involving judicial misconduct made no sense because it would have no significant effect in deterring the errors. *Id.*

¶ 80. The court went further, and stated that the exclusionary rule is appropriate only in cases involving "intentional conduct that was patently unconstitu-

---

[1] Justice Breyer, joined by Justice Souter, dissented on the grounds that the unlawful search at issue in *Herring* involved police error, and exclusion is appropriate when the error resulting in a Fourth Amendment violation is the police's. *Herring v. United States,* 555 U.S. 135, 129 S. Ct. 695, 710–11 (2009) (Breyer, J., dissenting). He explained that United States Supreme Court precedent on the exclusionary rule "was premised on a distinction between judicial errors and police errors," and the exclusionary rule was designed to deter the latter, not the former. *Id.* at 710.

tional." *Id.* at 702. Errors arising from "nonrecurring and attenuated negligence" are "far removed from the core concerns that led [the Court] to adopt the rule in the first place." *Id.*

¶ 81. The United States Supreme Court then summarized the operative rule for application of the exclusionary rule:

> To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system. As laid out in our cases, the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence.

*Id.*

¶ 82. The United States Supreme Court's decision in *Herring* has been widely seen as establishing broad principles that dramatically narrow application of the exclusionary rule. *See, e.g.,* Russell L. Weaver, *The Irrelevancy of the Fourth Amendment in the Roberts Court,* 85 Chi.-Kent L. Rev. 191, 203–04 (2010) (recognizing that the broad language in *Herring* "signals a dramatic restriction in the application of the exclusionary rule," and "represents a significant recasting of modern exclusionary rule theory").

¶ 83. What says the majority about these developments? Not much. Not much at all. Instead, the majority states: "We have never expanded the good-faith exception nor limited the exclusionary rule in the absence of United States Supreme Court precedent, and we decline to do so here." Majority op., ¶ 53 n.6. If the majority is looking for United States Supreme Court precedent regarding exclusion and the good-faith exception, I respectfully suggest that it take a closer look at the most recent Supreme Court pronouncements.

¶ 84. The most troubling thing about the majority opinion is that it completely ignores the development of the law in this area.[2] For example, the majority spends two paragraphs discussing this court's decision 83 years ago in *State v. Kriegbaum,* 194 Wis. 229, 215 N.W. 896 (1927) (*see* majority op., ¶¶ 29–30), and a mere two sentences referencing *Herring,* where it states a cabined and fact-specific summary of its holding (*see* majority op., ¶ 45). Commentators agree that the logic and sweeping language in *Herring* is hard to ignore. *See* Michael Vitiello, Herring v. United States: Mapp's "Artless" Overruling?, 10 Nev. L.J. 164, 164 (2010) ("While arguably a narrow decision, few readers can miss its sweeping logic, effectively eroding the general application of the Fourth Amendment's exclusionary rule.").[3] Somehow, the majority does just that.

¶ 85. The majority begins from the wrong starting point. While the nomenclature suggests an "exclusionary rule" and a "good-faith exception" to the rule, the law as it stands today is exactly the opposite. It would not be a stretch to say that the recent jurisprudence of the United States Supreme Court makes admission of unlawfully obtained evidence the rule, and authorizes an exclusionary exception in limited circumstances. *See id.*

---

[2] *See generally* Robert W. Smith, Herring v. United States: *The Continued Erosion of the Exclusionary Rule,* 61 Mercer L. Rev. 663 (2010) (discussing the evolution of the exclusionary rule from a straightforward pseudo-right to a much more narrow rule applying in certain factual situations).

[3] *See also* Matthew Allan Josephson, *To Exclude or Not to Exclude: The Future of the Exclusionary Rule After* Herring v. United States, 43 Creighton L. Rev. 175, 176 (2009) (discussing the fact that *Herring*'s logic is hard to ignore).

## II. THE PURPOSE OF EXCLUSION

¶ 86. The majority justifies applying the remedy of exclusion here on the grounds of "judicial integrity." Majority op., ¶¶ 63–67. But time and time again, the United States Supreme Court has reiterated that exclusion is not only unnecessary but inappropriate unless it will serve to deter knowing constitutional violations by police:

- "[T]he exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." *United States v. Leon*, 468 U.S. 897, 916 (1984).

- "[E]vidence obtained from a search should be suppressed *only* if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment." *Leon*, 468 U.S. at 919 (quoting *United States v. Peltier*, 422 U.S. 531, 542 (1975)) (emphasis added).

- "[W]here the officer's conduct is objectively reasonable, 'excluding the evidence *will not* further the ends of the exclusionary rule in any appreciable way.' " *Id.* at 919–20 (quoting *Stone v. Powell*, 428 U.S. 465, 539–40 (1976) (White, J., dissenting)) (emphasis added).

- "[A]pplication of the exclusionary rule properly has been *restricted* to those situations in which its remedial purpose is effectively advanced." *Illinois v. Krull*, 480 U.S. 340, 347 (1987) (emphasis added).

- "Where 'the exclusionary rule does not result in appreciable deterrence, then, clearly, its use . . . *is unwarranted.*' " *Arizona v. Evans*, 514 U.S. 1, 11 (1995) (quoting *United States v. Janis*, 428 U.S. 433, 454 (1976)) (emphasis added).

- " '[M]arginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant *cannot justify* the substantial costs of exclusion.' " *Id.* at 12 (quoting *Leon,* 468 U.S. at 922) (emphasis added).

- "[The exclusionary rule is] applicable *only* where its deterrence benefits outweigh its 'substantial social costs.' " *Pa. Bd. of Prob. & Parole v. Scott,* 524 U.S. 357, 363 (1998) (quoting *Leon,* 468 U.S. at 907) (emphasis added).[4]

¶ 87. Accordingly, evidence seized in violation of a defendant's right to be free from unreasonable searches and seizures should not be excluded if the police were acting in the objectively reasonable belief that their conduct did not violate the constitution.[5] *See Leon,* 468 U.S. 897 (no exclusion when police act in objectively

---

[4] This court has recognized the same principles:

> The exclusionary rule is a judicially created remedy, not a right, and its application is restricted to cases where its remedial objectives will best be served. That means that just because a Fourth Amendment violation has occurred does not mean the exclusionary rule applies. Rather, exclusion is the last resort. The application of the exclusionary rule should focus on its efficacy in deterring future Fourth Amendment violations. Moreover, marginal deterrence is not enough to justify exclusion; the benefits of deterrence must outweigh the costs.

*State v. Dearborn,* 2010 WI 84, ¶ 35, 327 Wis. 2d 252, 786 N.W.2d 97 (internal citations removed); *see also State v. Ward,* 2000 WI 3, ¶ 46, 231 Wis. 2d 723, 604 N.W.2d 517 ("Application of the [exclusionary] rule 'has been restricted to those areas where its remedial objectives are thought most efficaciously served.' ") (quoting *United States v. Calandra,* 414 U.S. 338, 348 (1974)).

[5] This is termed the "good faith exception" to the exclusionary rule. *See Arizona v. Evans,* 514 U.S. 1, 14 (1995). As noted

reasonable reliance on a search warrant later deemed invalid); *Krull*, 480 U.S. 340 (no exclusion when police act in objectively reasonable reliance on binding law later deemed unconstitutional).

¶ 88. The exclusionary rule applies, then, only when there is: (1) police conduct that the police knew or should have known was in violation of the Fourth Amendment (for simplicity's sake, "police misconduct"); and (2) sufficient capability of deterring that conduct[6] worth the substantial societal cost of exclusion. *Herring*, 129 S. Ct. at 702. Furthermore, the police conduct cannot be merely negligent, but must be "deliberate, reckless, or grossly negligent" or part of a pattern of "recurring or systemic negligence." *Id.*

¶ 89. The majority rejects these rules from the United States Supreme Court and embraces the "judicial integrity" purpose for exclusion—a purpose long-since abandoned by our highest Court. *See* majority op.,

---

above, a more appropriate phraseology under current doctrine might be the "exclusionary exception" to the good faith rule.

[6] The United States Supreme Court has categorically rejected the notion that the exclusionary rule was meant to (or even can) deter judges:

> To the extent that proponents of exclusion rely on its behavioral effects on judges and magistrates in these areas, their reliance is misplaced. First, the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates. Second, there exists no evidence suggesting that judges and magistrates are inclined to ignore or subvert the Fourth Amendment or that lawlessness among these actors requires application of the extreme sanction of exclusion. Third, and most important, we discern no basis, and are offered none, for believing that exclusion of evidence seized pursuant to a warrant will have a significant deterrent effect on the issuing judge or magistrate.

*United States v. Leon*, 468 U.S. 897, 916 (1984) (citation omitted).

¶ 3. The United States Supreme Court has explained "judicial integrity" as follows:

> The primary meaning of "judicial integrity" in the context of evidentiary rules is that the courts must not commit or encourage violations of the Constitution. In the Fourth Amendment area, however, the evidence is unquestionably accurate, and the violation is complete by the time the evidence is presented to the court. The focus therefore must be on the question whether the admission of the evidence encourages violations of Fourth Amendment rights. As the Court has noted in recent cases, *this inquiry is essentially the same as the inquiry into whether exclusion would serve a deterrent purpose.* The analysis showing that exclusion in this case has no demonstrated deterrent effect and is unlikely to have any significant such effect shows, by the same reasoning, that the admission of the evidence is unlikely to encourage violations of the Fourth Amendment.

*Janis,* 428 U.S. at 458 n.35 (emphasis added) (citations omitted).

¶ 90. Thus, while early exclusion cases did discuss "judicial integrity" as a secondary purpose of the exclusionary rule, judicial integrity for Fourth Amendment violations has effectively been subsumed under the main goal of deterring police misconduct.[7] *See id.* at 456 n.34. This explains why judicial integrity has received

---

[7] Until now, this court had agreed. *See State v. Knapp,* 2005 WI 127, ¶¶ 79–81, 285 Wis. 2d 86, 700 N.W.2d 899 (noting that preserving judicial integrity refers to preventing the judicial process from being subverted by law enforcement officers' unconstitutional actions); *State v. Eason,* 2001 WI 98, ¶ 44, 245 Wis. 2d 206, 629 N.W.2d 625 (noting that the exclusionary rule protects judicial integrity by ensuring that "the judiciary would refuse to give its imprimatur to police misconduct by relying upon evidence obtained through that misconduct").

little treatment in the case law. Notably, in the five United States Supreme Court cases addressing the good-faith exception since *Leon* (*Massachusetts v. Sheppard,* 468 U.S. 981 (1984); *Krull,* 480 U.S. 340 (1987); *Evans,* 514 U.S. 1 (1995); *Groh v. Ramirez,* 540 U.S. 551 (2004); *Herring,* 129 S. Ct. 695 (2009)), not one of them even mentions judicial integrity;[8] each focuses solely on whether exclusion would deter the police conduct giving rise to the constitutional violation. The majority now breathes new life into a legal theory put to rest long ago.[9]

## III. THE *EASON* REQUIREMENTS

¶ 91. I write further to address the appropriateness of applying the additional requirements of *Eason* to bench warrants. This court, in *State v. Eason,* adopted two additional requirements during the search warrant application process, making them necessary in order to shield any seized evidence from suppression if the search warrant is later deemed invalid. 2001 WI 98, ¶ 74, 245 Wis. 2d 206, 629 N.W.2d 625. The State must "show that the process used in obtaining *the search*

---

[8] The majority concludes that "these cases simply refused to exclude evidence based on judicial integrity on the specific facts of those cases." Majority op., ¶ 65. Not so. They never even applied a judicial integrity test. The majority can point to no United States Supreme Court case involving the good faith exception that even mentions judicial integrity since *Leon,* 26 years ago.

[9] Despite resting its holding on "judicial integrity," the majority does not tell us what this means. It states only that "judicial integrity is implicated when a judge issues a warrant that does not comply with statutory requirements and without the constitutionally required oath or affirmation." Majority op., ¶ 63.

*warrant* included a significant investigation and a review by either a police officer trained and knowledgeable in the requirements of probable cause and reasonable suspicion, or a knowledgeable government attorney." *Id.* (emphasis added). Such safeguards, we held, were required by Article 1, Section 11 of the Wisconsin Constitution. *Id.*[10]

¶ 92. These requirements are wholly inappropriate in the context of bench warrants, which normally need not involve any police investigation.

¶ 93. Bench warrants are available in criminal, civil, and contempt proceedings. *See* Wis. Stat. § 968.09 (2007–08)[11] (bench warrants in criminal cases for defendants or witnesses who fail to appear or violate bond); Wis. Stat. ch. 818 (bench warrants in civil cases for defendants who fail to pay judgments or fines and other defendants from whom something is required); Wis. Stat. § 818.01(2) (bench warrants for parties subject to contempt proceedings under chapter 785). None of the proceedings requires police to apply for the warrant. *See* § 968.09 (court may issue warrant on its own); ch. 818 (court may issue warrant upon request of plaintiffs); Wis. Stat. § 785.03 (court may issue warrant upon request of aggrieved parties or on its own).

---

[10] The *Eason* court's reasoning for requiring these additional measures can charitably be described as meager. Seeming to forget that exclusion is not a constitutional right, but a judicial remedy, the *Eason* court nonetheless asserted that these additional procedural safeguards were required by the Wisconsin Constitution. *Eason*, 245 Wis. 2d 206, ¶ 63. For support, the court appears to have rested almost entirely on a law review article it found persuasive. *See id.* Because these requirements suggested by a law professor were "not [] onerous or unreasonable," they became constitutional mandates. *Id.*

[11] All subsequent references to the Wisconsin Statutes are to the 2007–08 version unless otherwise indicated.

¶ 94. Because of this, applying the *Eason* requirements to bench warrants makes no sense. How are officers to ensure a "significant investigation" has taken place preceding the issuance of a bench warrant that the police had no role in? And what sort of review should the arresting officer in this case have undertaken before acting on what he understood was a valid arrest warrant? The majority first suggests that the *Eason* requirements are not necessary in situations where police are not involved in seeking a bench warrant, *see* majority op., ¶ 57, but later implies that some investigation or review could have saved the evidence in this case from exclusion, *see* majority op., ¶ 60.

## IV. CONCLUSION

¶ 95. Applying the proper legal principles here is straightforward. Instead of starting with exclusion and attempting to fit this case into a recognized exception, I follow the dictates of the United States Supreme Court and begin with the presumption of admissibility and then address whether the remedy of exclusion is appropriate.

¶ 96. The threshold question is whether the police engaged in deliberate, reckless, or grossly negligent conduct, or whether these facts evince a recurring or systemic negligence. *Herring,* 129 S. Ct. at 702. As the majority implicitly recognizes, this case reflects no police misconduct at all; the officer acted in objectively reasonable reliance on a warrant he had no reason to know was invalid. Therefore, exclusion is unwarranted because it will not serve its intended purpose of deterring police misconduct, and its application here cannot justify the "substantial social costs" exclusion imposes. *Id.* at 700–01.

¶ 97. The majority, on the other hand, is enmeshed in an outdated analytical framework. The United States Supreme Court has recognized that its early approach to exclusion was too broad. It has since recast the exclusionary rule as a drastic remedy that is justified in only limited circumstances where exclusion will deter flagrant police misconduct. *See id.* at 700–02. Because the majority fails to appreciate and apply the clear instructions of the United States Supreme Court, I respectfully dissent.

¶ 98. I am authorized to state that Justice PATIENCE DRAKE ROGGENSACK joins this dissent.